**United States District Court**
For the Northern District of California

1

2

3 UNITED STATES DISTRICT COURT

4 NORTHERN DISTRICT OF CALIFORNIA

5 EUGENE & HERENIA B. PEREZ,                    Case No. C-11-02279 JCS

6

7               Plaintiffs,                    **ORDER GRANTING DEFENDANTS'
                                               MOTIONS TO DISMISS AND
                                               DISMISSING COMPLAINT WITH**
8          v.                                  **LEAVE TO AMEND [Docket Nos. 5, 10]**

8 WELLS FARGO BANK, N.A., ET AL.,

9

10              Defendants.
   _____/

11

12 **I.     INTRODUCTION**

13         Plaintiffs initiated this action in the Superior Court of the County of San Mateo on April 6,

14 2011, bringing claims challenging the foreclosure sale of the property located at 95 Monterey Drive,

15 Daley City, CA.  Plaintiffs named as Defendants Wells Fargo Bank, N.A. and Wells Fargo Home

16 Mortgage (hereinafter, referred to collectively as "Wells Fargo"), as well as First American Loanstar

17 Trustee Services LLC ("Loanstar"). Wells Fargo removed to federal court on the basis of federal

18 question jurisdiction pursuant to 28 U.S.C. § 1331.  Wells Fargo and Loanstar have filed motions to

19 dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

20 (referred to individually as "Wells Fargo Motion" and "Loanstar Motion" and collectively as the

21 "Motions").  The parties have consented to the jurisdiction of the undersigned magistrate judge

22 pursuant to 28 U.S.C. § 636(c).  A hearing on the Motions was held on Friday, **August 26, 2011.**

23 For the reasons stated below, the Motions are GRANTED.

24 **II.    REQUESTS FOR JUDICIAL NOTICE**

25         Wells Fargo and Loanstar have each filed a request for judicial notice of various documents

26 that they assert are either matters of public record or directly referenced in Plaintiffs' complaint

27 ("Complaint").  *See* Docket Nos. 6 & 11 (hereinafter, "Wells Fargo RJN" and "Loanstar RJN").

28 Plaintiffs have not objected to Defendants' requests or challenged the authenticity of any of the

United States District Court

For the Northern District of California

1   attached documents.  However, two of the documents offered by Wells Fargo are neither public

2   records nor referenced in the Complaint: the February 5, 2009 and May 7, 2009 letters from Wells

3   Fargo to Plaintiffs.  *See* Wells Fargo RJN, Exs. D & E.  Wells Fargo states in its request for judicial

4   notice that these documents are referenced in the Complaint and identifies specific paragraphs that

5   purportedly reference the two letters.  *See* Wells Fargo RJN at 3 (stating that February 5, 2009 letter

6   is referenced in paragraphs 39-41 of the Complaint and that the May 7, 2009 Letter is referenced in

7   paragraphs 41-43 of the Complaint).  Contrary to Wells Fargo's assertions, neither letter is

8   referenced in the cited paragraphs.  Neither are these documents public records.  Accordingly, the

9   Court takes judicial notice of all of the records offered in Defendants' requests for judicial notice,

10  pursuant to Rule 201 of the Federal Rule of Evidence, except Exhibits D & E of the Wells Fargo

11  RJN.  The Court may consider the documents of which it takes judicial notice, along with the

12  allegations in Plaintiff's Complaint, on a motion to dismiss under Rule 12(b)(6) of the Federal Rules

13  of Evidence.  *See Catholic League for Religious and Civil Rights v. City and County of San*

14  *Francisco*, 464 F.Supp.2d 938, 941 (N.D.Cal.2006).

15  **II.      BACKGROUND**

16          **A.      Factual Background**[1]

17          On August 17, 2007, the Perezes borrowed $525,000 from Wells Fargo.  Complaint, ¶ 34;

18  Request for Judicial Notice in Support of Defendant Wells Fargo's Notice of Motion and Motion to

19  Dismiss Complaint ("Wells Fargo RJN"), Ex. B (Deed of Trust dated 8/17/07) ("Loan" or "Loan

20  Agreement").  The Loan was secured by a deed of trust on property located at 95 Monterey Drive,

21  Daly City, California.  *Id*. at 3.  The deed of trust contained an "Initial Interest Adjustable Rate

22  Rider" signed by both Eugene and Herenia Perez that provided for an initial interest rate of 8.5%,

23  switching to an adjustable rate after the  first three years of the loan. *Id*.  As of October 2008, the

24  Perezes were "having difficulties making their monthly mortgage payments" and "attempted to

25  obtain a loan modification with the Defendants."  Complaint, ¶ 37.

26  _____

27          [1]The Court assumes the allegations in the complaint to be true for the purposes of this motion. *See Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996)(on motion to dismiss under Rule

28  12(b)(6) of the Federal Rules of Civil Procedure, the court assumes the facts alleged in the complaint are true).

**United States District Court**
For the Northern District of California

1    In November 2008, Plaintiffs entered into a Special Forbearance Agreement ("Special

2  Forbearance Agreement") with Wells Fargo.  Complaint, ¶ 38; Wells Fargo RJN, Ex. C.  The

3  Special Forbearance Agreement included a cover letter and a page containing terms and conditions.

4  Wells Fargo RJN, Ex. C.  The cover letter states, in part, as follows:

5       Thank you for contacting us regarding your financial hardship on the loan mentioned above.
        Our goal is simple.  We want to ensure that you have every opportunity to retain your home.
6       *Based on our telephone conversation and the financial information you provided*, we would
        like to offer you a Special Forbearance Plan to Loan Modification review.

7
        Currently, your loan is due for 1 installments, from October 01, 2008 through October 01,
8       2008.  As agreed, you have promised to pay the amounts shown below by the dates indicated
        with the understanding the final delinquent balloon payment will be added back into the loan
9       balance if approved for the loan modification.  Also enclosed are the terms and conditions of
        this forbearance.  Please sign the enclosed agreement and return it with the first installment.
10      This is not a waiver of the accrued or future payments that become due, but a period for you
        to determine how you will be able to resolve your financial hardship.  Any payments
11      received as scheduled will be applied to the delinquent payments on the loan.

12  *Id*. at 1.  The Terms and Conditions state, in part, as follows:

13      1.   Currently, your loan is due for 1 installments, from October 01, 2008 through
             October 01, 2008.  The indebtedness of the referenced loan is in default and in
14           consideration of extending forbearance for a period of time, it is necessary that you
             indicate your understanding and acceptance of the terms of the forbearance agreement
15           by immediately signing and returning this agreement.

16      2.   Step One: Payment must be made strictly in accordance with the enclosed payment
             schedule and forbearance agreement conditions, this plan will take care of some of
17           your delinquency.  This plan is an agreement to temporarily accept reduced payments
             or maintain regular monthly payments during the plan specified below, please note
18           the final delinquent balloon payment will be added back into the loan balance if
             approved for the loan modification.  Step two: Upon successful completion of the
19           outlined payments, your loan will be reviewed for a loan modification.  Step Three:
             *Your loan will be modified, unless your income or financial situation has changed.*
20           This may satisfy the remaining past due amount on your loan by changing one or
             more terms of your loan.

21
        3.   The lender is under no obligation to enter into any further agreement, and this
22           forbearance shall not constitute a waiver of the lendder's right to insist upon strict
             performance in the future.

23
        4.   All of the provisions of the note and security instrument, except as herein provided,
24           shall remain in full force and effect.  Any breach of any provision of this agreement
             or non-compliance with this agreement, shall render the forbearance null and void,
25           and at the option of the lender without further notice to you may terminate this
             agreement.  The lender, at its option, may institute foreclosure proceedings according
26           to the terms of the note and security instrument without additional expenses of
             attorney's fees and foreclosure costs.

27
        5.   Each payment must be remitted according to the schedule below.
28

| PLAN | DATE | AMT | PLAN | DATE | AMT |
|------|------|-----|------|------|-----|
| 01 | 11/30/09 | 4,917.59 | 02 | 12/30/08 | 4,917.59 |
| 03 | 01/30/09 | 4,917.59 | 04 | 02/28/09 | 8,432.94 |

The final delinquent balloon payment will be added back into the loan balance if approved for the loan modification.

6.   There is no "grace period" allowance in this agreement.  All payments must be received on or before the agreed due date.  If any payment is not received on or before the due date, the agreement will be void and the total delinquency, including fees, will be due immediately.

7.   The total amount indicated on each payment of the payment schedule must be remitted.  In the event the total amount due of each payment is not received, this agreement will be rendered null and void.

Wells Fargo RJN, Ex. C (emphasis added).

Plaintiffs allege that "with the help of family members and friends, [they] were able to make the Forbearance Agreement payments [and that Wells Fargo] accepted these payments."  Complaint ¶ 40.   Nonetheless, Wells Fargo ultimately rejected Plaintiffs' loan modification request and recorded a Notice of Default on March 16, 2009. *Id*., ¶ 46; *see also* Wells Fargo RJN, Ex. F.  The property was sold to Wells Fargo at a foreclosure sale on June 28, 2010. Wells Fargo RJN, Ex. G ( Trustee's Deed Upon Sale), at 2. Wells Fargo sold the property to Yu Yim and Lai Ngor Ma in March 2011. Wells Fargo RJN, Ex. H (Grant Deed) at 1.2.

In 2009 and 2010, Plaintiffs filed a series of bankruptcy petitions, two jointly and one by Herenia Perez on her own.  *See* Wells Fargo RJN, Exs. J, K & L.  All of the bankruptcy cases were dismissed after the Perezes failed to provide necessary documentation and/or appear at court mandated hearings. *Id.*  At the time Plaintiffs initiated the three bankruptcy actions they were proceeding in pro se, though in *one* of the bankruptcy actions, filed by Herenia Perez on her own, counsel was retained by the petitioner approximately two weeks after the petition had been filed. *See id*., Ex. L.

In March 2011, Herenia Perez filed a pro se civil action against Wells Fargo and Loanstar in San Mateo Superior Court.  Wells Fargo RJN, Ex. M (Complaint for Monetary Damages, Statutory Damages, Punitive Damages, Injunctive Relief, and Declaratory Relief).   That action, which is

**United States District Court**
For the Northern District of California

1    currently pending in state court, includes many of the same causes of action as the instant case.[2]

2        Finally, Plaintiffs filed the instant action in San Mateo Superior Court in April 2011.  In the

3    Complaint, Plaintiffs assert the following claims:

4        (1) **Truth in Lending Act, 15 U.S.C. §§  1601, *et. seq*. ("TILA"):**  Plaintiffs allege that

5    when they entered into the Loan Agreement, they were given assurances that they qualified for the

6    Loan but the risks of taking the Loan were not clearly explained to Plaintiffs.  Complaint, ¶ 54.

7    Plaintiffs further allege  that their primary language was Tagalog and that the "Bank failed to provide

8    an appropriate translator in order to properly explain" the Loan Agreement. *Id*., ¶ 55.

9        (2) **California Business and Professions Code §§ 17200, *et seq*. ("UCL")**:  Plaintiffs allege

10   that Defendants violated the UCL by making untrue and misleading statements in order to induce

11   them to enter into a subprime loan that Defendants knew was risky and that Plaintiffs could not

12   afford. *Id*., ¶¶ 61-62.  In particular, Plaintiffs allege that Defendants made untrue statements regarding

13   the terms and payment obligations of the Loan Agreement and told Plaintiffs that: 1) they were

14   "mortgage loan experts that could be trusted to help Plaintiffs[] in getting the . . .Loan;" 2) home

15   values would continue to rise and that Plaintiffs could refinance easily; and 3)  Defendants' assessed

16   value of Plaintiffs' home was accurate.  *Id*., ¶ 61.  In fact, Plaintiffs allege, Defendants wrongfully

17   inflated the value of their home and recklessly offered them a subprime loan for which they did not

18   actually qualify. *Id*., ¶ 62.

19

20   ───────────────────

21       [2]  The parties do not address the implications of the pending state court action for this Court.
     "[I]n situations involving the contemporaneous exercise of concurrent jurisdictions . . . by state and
22   federal courts," a federal court may, under "exceptional" circumstances, dismiss an action based on the
     principles of  "[w]ise judicial administration, . . . conservation of judicial resources and comprehensive
     disposition of litigation." *Colorado River Water Conservationist Dist. v. United States*, 424 U.S. 800,
23   817-18 (1976).  In the alternative, a federal court may decline to exercise supplemental jurisdiction over
     state law claims under 28 U.S.C. §1367(c) where one or more of the following circumstances exists:
24
     (1)      the claim raises a novel or complex issue of State law,
25   (2)      the claim substantially predominates over the claim or claims over which the district court has
              original jurisdiction,
26   (3)      the district court has dismissed all claims over which it has original jurisdiction, or
     (4)      in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
27
28   28 U.S.C. § 1367(c). The Court finds that the circumstances of this case do not warrant the exercise of
     discretion to decline jurisdiction or stay any claims under either doctrine.

United States District Court

For the Northern District of California

(3) **Breach of fiduciary duty**: Plaintiffs allege that Defendants breached a fiduciary duty owed by mortgage brokers to their clients by inducing them to take a subprime loan that they knew was risky to Plaintiffs and that Plaintiffs could not afford, without disclosing the profits Defendants received from making such loans.  *Id*., ¶ 67.

(4) **Fraud**: Plaintiffs allege that Defendants made false statements to induce them to enter into the Loan.  *Id*., ¶¶ 80-84.  In addition, Plaintiffs allege that Defendants in November 2008 "told Plaintiffs that once they made all the trial plan payments [under the Special Forbearance Agreement], the Defendants would complete the Plaintiffs' application for a permanent loan modification."  *Id*., ¶ 73.  According to Plaintiffs, "[t]he Defendants intended to defraud the Plaintiffs by inducing them to make the trial plan payments with [the] promise that they would qualify for a permanent loan modification after making the payments.  Plaintiffs made the payments.  Defendants accepted the payments.  Defendants refused to offer promised loan modification."  *Id*., ¶ 74.

(5) **Breach of the implied covenant of good faith and fair dealing**: Plaintiffs allege that "Defendant was required to apply Plaintiffs [sic] extra payments to the principal of their loan. However, in violation of the contract and of the implied covenant of good faith and fair dealing, Defendant failed to apply Plaintiffs [sic] extra payments to interest that was not legitimately owed by the Plaintiffs."  *Id*., ¶ 90.  Plaintiffs further allege that "Defendant unfairly interfered with Plaintiffs [sic] right to received promised benefits under the contract by refusing to refinance and charging unconscionable monthly payments that Defendant knew were well beyond Plaintiffs [sic] actual ability to pay."  *Id*.

(6) **Breach of loan contract**: Plaintiffs allege that Defendants breached the Loan Agreement by "fail[ing] to perform upon their promises made to induce Plaintiffs to enter the loan.  Such promises include, for example, that Plaintiffs were qualified for the loan and could afford payments for the life of the loan at their current income level; and that Plaintiffs could easily refinance if monthly payments became unaffordable due to loss of income, the highly risky loans were Plaintiffs [sic] best option; and a variety of other promises and wrongful behavior."  Complaint, ¶97.  Plaintiffs also allege that Defendants "failed to accurately credit homeowners' payments to their accounts,

1   assessing and demanding substantial, unwarranted costs and fees under threat of foreclosure, and

2   other behavior in breach of the contract." *Id*., ¶ 98.

3          (7) **California Civil Code § 2923.5:** Plaintiffs allege that Defendants failed to contact them to

4   "explore options" to avoid foreclosure and failed to file a proper declaration that they complied with

5   this provision prior to filing a Notice of Default.  *Id*., ¶¶ 103-107.

6          (8) **Wrongful foreclosure**:  Plaintiffs allege that Defendants failed to comply with Cal. Civ.

7   Code Section 2923.5 (discussed above) and  the "comprehensive statutory scheme [ ] under

8   California Civil Code Section 2924."  *Id*., ¶ 114.  Plaintiffs further allege that the Notice of Default

9   reflects an incorrect amount owed as a result of "an incorrect interest rate adjustment, incorrect tax

10  impound accounts, and misapplied payments."  *Id*., ¶ 115.

11         (9) **Promissory estoppel**:  Plaintiffs allege that Defendants promised that they would

12  "complete the Plaintiffs' loan modification" once Plaintiffs made all of the required payments under

13  the Special Forbearance Agreement.  Complaint, ¶ 119. Plaintiffs further allege that they reasonably

14  relied on the promise and were harmed by Defendants breach of this promise. *Id*., ¶¶ 122-123.

15         (10) **Negligence**: Plaintiffs allege that Defendants breached a duty of care to act as a

16  reasonable lender by placing Plaintiffs into a "risky or unaffordable loan."  *Id*., ¶¶ 128-129.

17         (11) **Intentional infliction of emotional distress**: Plaintiffs allege that Defendants engaged in

18  extreme and outrageous conduct, causing emotional distress, by "plac[ing] Plaintiffs into an

19  inappropriate and unaffordable loan."  *Id*., ¶¶ 135-136.

20         (12) **Predatory lending under Cal. Fin Code §§ 4970-4979.8**: Plaintiffs allege that

21  Defendants engaged in predatory lending practices by "steering, counseling and directing Plaintiffs to

22  accept a loan product that has a specified risk grade less favorable than another risk grade for which

23  they could have qualified."  *Id*. ¶ 142.  In particular, Plaintiffs allege that Defendants "lured Plaintiffs

24  to accept a sub-prime loan product when Plaintiffs could have qualified for a prime product since

25  Plaintiffs had good credit and a steady income."  *Id*., ¶ 143.

26         (13) **Misrepresentation**: Plaintiffs allege that Defendants made false representations around

27  November 2008 in order to induce Plaintiffs to enter into the Loan Agreement.  *Id*., ¶¶ 149-152.

28

United States District Court

For the Northern District of California

1    (14) **Quiet title**: Plaintiffs allege that they hold title to the property at 93 Monterey Drive,

2  Daly City and that an adverse claim to title exists because Defendants have foreclosed on the

3  property.  *Id.,* ¶¶ 155-156.  Accordingly, Plaintiffs seek to quiet title in the Plaintiffs as of the date of

4  the Complaint.  *Id.* ¶ 157.

5    (15) **California Civil Code § 1632**: Plaintiffs allege that Defendants were required to provide

6  a translation of the loan agreement in Plaintiffs' native language of Tagalog pursuant to Cal. Civ.

7  Code § 1632 and that Defendants failed to do so.  *Id.*, ¶¶ 160-164.

8    Wells Fargo removed the action to this Court based on federal question jurisdiction and now

9  brings a motion to dismiss the complaint.  Loanstar brings a separate motion to dismiss.

10    **B.    The Wells Fargo Motion**

11    Wells Fargo asserts that all of Plaintiffs' claims fail as a matter of law under Rule 12(b)(6) of

12  the Federal Rules of Civil Procedure for the following reasons:

13    Judicial estoppel as to Herenia Perez: Wells Fargo asserts that all of the claims are barred to

14  the extent that they are asserted by Herenia Perez because in Herenia Perez's Chapter 13 bankruptcy

15  proceeding, she failed to disclose the claims asserted in this action in bankruptcy filings that asked

16  her to list "other contingent and liquidated claims of every nature."  Wells Fargo Motion at 8 (citing

17  Wells Fargo RJN, Ex. N at 5, ¶ 21 (Schedule B in Bankruptcy Case No. 10-32578, dated August 18,

18  2010).  According to Wells Fargo, based on the inconsistent litigation positions taken by Herenia

19  Perez, her claims in this action should be barred under the doctrine of judicial estoppel.  *Id.* at 7-9

20  (citing *Hamilton v. State Farm Fire & Casualty Co*., 270 F.3d 778, 782-783 (9th Cir. 2001)).

21    Statutes of limitations as to certain claims to the extent they are based on loan origination:

22  Wells Fargo asserts that Claims One (TILA) , Four (Fraud) , Ten (Negligence), Eleven (Intentional

23  Infliction of Emotional Distress), Twelve (Predatory Lending) and Fifteen (Cal. Civ. Code Section

24  1632) are barred by the applicable statutes of limitations.  Motion at 9. In particular, the applicable

25  statutes of limitations for these claims are as follows: 1) three years for Fraud under Cal. Civ. Proc.

26  Code Section 338(d); 2) two years for Negligence under Cal. Civ. Proc. Code Section 335.1; 3) two

27  years for intentional infliction of emotional distress under Cal. Civ. Proc. Code Section 335.1; 4)

28  three years for predatory lending under Cal. Civ. Proc. Code Section 338(a); 5) one year for violation

1    of Cal. Civ. Code Section 1632, under Cal. Civ. Proc. Code  Section 340(a). *Id*. at 9-10.  Thus, to the

2    extent these claims are based on the Loan obtained by Plaintiffs in 2007, they are untimely.  Wells

3    Fargo further asserts that the Complaint contains no allegations that would support a finding of

4    equitable tolling as to any of these claims.

5        <u>Tender rule</u>: Wells Fargo asserts that Claims Eight and Fourteen, for wrongful foreclosure and

6    quiet title, sound in equity and therefore are barred by California's tender rule, which requires that a

7    plaintiff seeking to challenge a foreclosure sale in equity has standing only if she has tendered the

8    obligation in full.  *Id*. at 10-11 (citing *Abdalla v. United Sav. Bank*, 43 Cal. App. 4th 1101, 1109

9    (1996)).

10        <u>Rule 9(b) requirements as to fraud-based claims</u>: Wells Fargo asserts that Claims Four and

11    Thirteen, for fraud and misrepresentation, amount to a single claim and that the claim fails because it

12    does not plead the alleged fraud with particularity, as required under Rule 9(b) of the Federal Rules

13    of Civil Procedure.  *Id*. at 12.  According to Wells Fargo, in order to satisfy this requirement,

14    Plaintiffs are required to plead not only the time, place and content of the alleged false statements or

15    omissions but also allege facts showing why the statements or omissions were false or misleading,

16    which Plaintiffs have failed to do.  *Id*. at 12-14.

17        <u>No viable UCL claim</u>: Wells Fargo asserts that this claim fails because Plaintiffs have not

18    alleged any fraudulent, illegal or unfair conduct on the part of Wells Fargo.  *Id*. at 14-17.

19        <u>No fiduciary duty on the part of lender</u>: Wells Fargo argues that Claim Three (breach of

20    fiduciary duty) fails because a lender does not owe a duty to a borrower and Plaintiffs have not

21    alleged any other facts suggesting the existence of a special relationship that would give rise to a

22    fiduciary duty on the part of Wells Fargo.  *Id*. at 17-18.

23        <u>Implied covenant of good faith and fair dealing claim not based on any specific contractual

24    provision</u>: Wells Fargo argues that the claim for breach of implied covenant of good faith and fair

25    dealing fails because under California law, such a claim must be linked to some specific contractual

26    provision.  *Id*. at 19-20.  Plaintiffs allege that the breach is based on Wells Fargo's failure to apply

27    their special forbearance payments "to the principal of their loan." Complaint, ¶ 90.  However, Wells

28

1  Fargo asserts that there is no specific contractual obligation to apply the special forbearance

2  payments to principal and therefore this claim fails as a matter of law.  *Id*.

3      Breach of contract claim: Wells Fargo challenges Plaintiffs' breach of contract claim on the

4  basis that they have not identified any specific provision that was breached.  *Id*. at 20.  Rather, Wells

5  Fargo asserts, Plaintiffs have alleged that Defendants failed to perform on their promise that Plaintiffs

6  were qualified for the loan and could afford payments for the life of the loan and that they would be

7  able to refinance easily.  *Id*.  According to Wells Fargo, nothing in the deed of trust makes such a

8  promise and therefore this claim fails.

9      Cal. Civ. Code Section 2923.5 claim fails because foreclosure sale has already taken place:

10  Wells Fargo argues that Plaintiffs' claim under Cal. Civ. Code Section 2923.5, which requires lenders

11  to explore options for refinancing prior to foreclosure, fails as a matter of law because California

12  courts have held that this provision does not create a right to loan modification or have any effect on

13  a completed foreclosure sale but rather, merely allows a foreclosure sale to be delayed pending

14  compliance with this provision.  *Id*. at 21 (citing *Roberts v. J.P. Morgan Chase Bank*, 2011 WL

15  864949 at *5 (N.D. Cal. Mar. 2011) (citing *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 223,

16  231, 235 (2010)).  As the foreclosure sale has already occurred, Wells Fargo argues, no remedy is

17  available under this provision.

18      Elements of promissory estoppel have not been alleged: Wells Fargo asserts that Claim Nine ,

19  for promissory estoppel, fails because Plaintiffs have not alleged the existence of any enforceable

20  promises to give the Perezes a loan modification.  *Id*. at 21-22.

21      **C.      The Loanstar Motion**

22      In the Loanstar Motion, Loanstar seeks dismissal of all of Plaintiffs' claims under Rule

23  12(b)(6) on the ground that it is immune from liability under Cal. Civ. Code Sections 47 and 2924(d).

24  Loanstar Motion at 2-3.  In particular, Loanstar asserts that as a trustee, its involvement in the

25  foreclosure proceedings, namely, recording foreclosure documents based on information provided to

26  it by Wells Fargo, cannot give rise to liability so long as Loanstar relied in good faith on the

27  information provided by Wells Fargo.  *Id*.  In addition, Loanstar asserts that each of Plaintiffs' claims

28  fails on the following grounds:

United States District Court
For the Northern District of California

1    Claim One (TILA): Loanstar asserts that this claim is time-barred to the extent that Plaintiffs

2  seek rescission because rescission is only available under TILA prior to foreclosure.  *Id.* at 3 (citing

3  15 U.S.C. § 1635(f).  Moreover, Loanstar asserts, as a substituted  trustee appointed after the closing

4  of the loan, it is not liable under TILA because it is not a "creditor" under 15 U.S.C. § 1602(f).  *Id.* at

5  4.  Finally, Loanstar asserts that this claim fails to the extent it seeks rescission because rescission is

6  only available where the consumer has made a tender of the amount due, which has not been alleged

7  here.  *Id.*

8    Claim Two (UCL): Loanstar argues that Plaintiffs have failed to allege any conduct on the

9  part of Loanstar that could establish unlawful, unfair or fraudulent business practices, as required to

10  state a claim under the UCL.  Loanstar notes that the only specific allegations relating to the UCL

11  claim refer to statements relating to the origination of the loan and Plaintiffs' efforts to obtain a loan

12  modification, none of which involved Loanstar.

13    Claim Three (Breach of Fiduciary Duty): Loanstar asserts that this claim fails because a

14  foreclosure trustee is not a fiduciary as a matter of law.  *Id.* at 6 (citing *Heritage Oaks Partners v.*

15  *Loanstar Title Ins. Co.*, 155 Cal. App. 4th 339, 345-346 (2007); *Vournas v. Fidelity Nat. Title Ins.*

16  *Co.*, 73 Cal. App. 4th 668, 677 (1999)).

17    Claims Four and Thirteen (Fraud and Misrepresentation): Loanstar contends that these claims

18  fail because Plaintiffs have not alleged specific facts establishing the nature of the fraud or

19  misrepresentation as to Loanstar.  *Id.* at 6-7.  The only allegations relating to these claims, Loanstar

20  asserts, are based on alleged misrepresentations that Plaintiffs' would receive a loan modification,

21  none of which are attributable to Loanstar.  *Id.*

22    Claims Five and Six (Breach of Implied Covenant of Good Faith and Fair Dealing and Breach

23  of Contract): Loanstar argues that Plaintiffs fail to state a claim for breach of the implied covenant of

24  good faith and fair dealing or breach of contract against Loanstar because the Complaint does not

25  allege the existence of any contract between Plaintiffs and Loanstar.  *Id.* at 7–8 (citing *Smith v. City*

26  *and County of San Francisco*, 225 Cal. App. 3d 38, 49 (1990)).

27    Claim Seven (Violation of Cal. Civ. Code Section 2923.5): Loanstar argues that this claim

28  fails because Plaintiffs admitted in the Complaint that they attempted to work out a loan modification

11

with Defendants. *Id*. at 9.  Loanstar further notes that the Notice of Default includes a declaration attesting to the fact that Defendants complied with this provision, which is sufficient to satisfy the requirements of this provision. *Id*. (citing Loanstar RJN, Ex. B).

Claim Eight (Wrongful Foreclosure): Loanstar contends that this claim fails because Plaintiffs have not alleged that Loanstar breached any duty under the foreclosure statutes. *Id*.  Loanstar further asserts that to the extent Plaintiffs allege that the amount stated on the Notice of Default is incorrect, Loanstar is not liable because it is entitled to rely without liability on the information provided by the beneficiary regarding the amount of the debt pursuant to Cal. Civ. Code Section 2924(b). *Id*.

Claim Nine (Promissory Estoppel): Loanstar argues that the claim for promissory estoppel fails because, to the extent that it is based on the allegation that Defendants orally promised to modify Plaintiffs' loan, there is no allegation of detrimental reliance.  Loanstar further asserts that in the absence of any allegation that there was additional consideration, Plaintiffs' claim based on an alleged oral modification of a written instrument is precluded under the parol evidence rule and the Statute of Frauds. *Id*. at 11.

Claim Ten (Negligence): Loanstar asserts that Plaintiffs' negligence claim fails because Plaintiffs fail to allege any duty on the part of Loanstar or a breach of duty. *Id*. at 12.

Claim Eleven (Intentional Infliction of Emotional Distress): Loanstar contends that this claim fails because Plaintiffs have not alleged that Loanstar engaged in extreme and outrageous conduct and in fact, have not alleged any specific conduct on the part of Loanstar in support of this claim. *Id*. at 12-13.

Claim Twelve (Predatory Lending) Loanstar argues that this claim fails because Plaintiffs have not alleged any involvement by Loanstar in the loan origination or any of the alleged wrongdoing. *Id*. at 13.

Claim Thirteen (Quiet Title): Loanstar asserts that Plaintiffs cannot assert this claim because they have no interest in the property at this point and Plaintiffs have not alleged any adverse interest of Loanstar in the property. *Id*. at 14.

United States District Court
For the Northern District of California

12

United States District Court

For the Northern District of California

1    Claim Fourteen (Cal. Civ. Code Section 1632): Loanstar asserts that this claim fails as to

2  Loanstar because Plaintiffs have not alleged any involvement on the part of Loanstar in the

3  origination of the loan. *Id.*

4    Finally, Loanstar argues that the request that the trustee sale be set aside that is included in

5  Plaintiffs' prayer for relief fails because Plaintiffs have not tendered the outstanding obligation on the

6  loan. *Id.* at 14-15.

7    **D.    Plaintiffs' Opposition**

8    In their opposition brief, Plaintiffs make the following arguments:

9    Judicial estoppel: Plaintiffs assert that judicial estoppel does not bar Herenia Perez's claims

10 because "Plaintiffs may have been given bad legal advice from agencies that were not authorized to

11 give legal advice and thus, the Plaintiffs are in this current predicament."  Opposition at 4.

12   Equitable tolling: Plaintiffs contend that they have sufficiently alleged that the statutes of

13 limitations cited by Defendants were subject to equitable tolling because Plaintiffs were

14 unsophisticated consumers, Defendants failed to explain or disclose in a "meaningful manner the

15 terms and conditions of their loan products" and Plaintiffs didn't understand the terms of their loan

16 until it was explained to them by their counsel, Kenneth Graham, in April 2011. *Id.* at 5.

17   TILA claim: Plaintiffs assert that this claim is adequately alleged because Defendants did not

18 provide "appropriate disclosure" and "failed to properly underwrite the Plaintiffs' loans based on

19 their income." *Id.* at 6.  Plaintiffs state that they will "investigate this matter during the Discovery

20 process" but assert that Defendants "[c]learly . . . took advantage of the Plaintiffs." *Id.*

21   Tender rule: Plaintiffs contend that the tender rule does not bar Claims Eight and Fourteen for

22 wrongful foreclosure and quiet title because the trial court has the discretion to "accommodate the

23 equities" where it would be inequitable to bar a claim based on failure to tender. *Id.* at 6-7 (citing

24 *Pantoja v. Countrywide Home Loans*, 640 F. Supp. 2d 1177, 1184 (N.D. Cal. 2009); *Onofrio v. Rice*,

25 55 Cal. App. 4th 413, 424 (1997); *Humboldt Sav. Bank v. McCleverty*, 161 Cal. 285 (1911)).

26   Fraud and misrepresentation claims: Plaintiffs assert that these claims are adequately alleged

27 based on the allegation that Defendants' representatives made "deceptive statements . . . to Plaintiffs

28 in order to induce them to enter into the Subject Loan Agreement that was patently unfair and

13

United States District Court

For the Northern District of California

1    usuitable." *Id*. at 7.  Plaintiffs further state that they intend to obtain evidence in support of these

2    claims through discovery.  *Id*.

3         UCL Claim: Plaintiffs assert that a UCL claim may be based on allegations that Defendants

4    violated Cal. Bus. & Prof. Code § 17500, which makes it unlawful for a business to disseminate any

5    statement that is "untrue or misleading, and which is known, or which by the exercise of reasonable

6    care should be known to be untrue or misleading."  *Id*.  Here, Plaintiffs assert, "Defendants, through

7    its representative to be named at a further time, after our Discovery process, made false and

8    misleading statements to Plaintiffs in order to sell more loan products."  *Id*. at 8.  In particular,

9    Plaintiffs contend that "Defendants failed to inform Plaintiffs that other safer loan products for which

10   Plaintiffs could have qualified were available on the market . . . [and that] the loan terms were the

11   best on the market."  *Id*.

12        Fiduciary duty: Plaintiffs argue that applying the test for determining whether there is a

13   fiduciary duty to the facts of this case, Defendants owe a fiduciary duty to Plaintiffs.  *Id*. (citing

14   *Biakanja v. Irving*, 49 Cal. 2d 647 (1958); *Garcia v. Ocwen Loan Servicing LLC*, 2010 WL 1881098)

15   (N.D. Cal. May 10, 2010)).

16        Breach of contract and implied covenant of good faith and fair dealing: Plaintiffs argue that

17   these claims are adequately alleged based on the existence of the Loan Agreement, the allegation that

18   Plaintiffs performed under the contract by making mortgage payments and the allegation that

19   Defendants failed to negotiate a loan modification in good faith, resulting on the loss of Plaintiffs'

20   home.  *Id*. at 9-10.

21        Promissory estoppel: Plaintiffs assert that they have alleged all of the elements of a claim for

22   promissory estoppel based on the allegation that Defendants "promised Plaintiffs would be qualified

23   for a loan modification" and Plaintiffs relied on the promise, to their detriment, when they made the

24   payments under the Special Forbearance Agreement.  *Id*. at 10.

25   **II.    ANALYSIS**

26        **A.    Legal Standard Under Rule 12(b)(6)**

27        A complaint may be dismissed for failure to state a claim for which relief can be granted

28   under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  "The purpose

**United States District Court**
For the Northern District of California

1    of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star*

2    *Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the

3    pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a]

4    pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the

5    claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

6        In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes

7    "all allegations of material fact as true and construe(s) them in the lights most favorable to the non-

8    moving party." *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may

9    be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid

10   theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must

11   "contain either direct or inferential allegations respecting all the material elements necessary to

12   sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 562

13   (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). The

14   factual allegations must be definite enough to "raise a right to relief above the speculative level." *Id*.

15   at 555. However, a complaint does not need detailed factual allegations to survive dismissal. *Id*.

16   Rather, a complaint need only include enough facts to state a claim that is "plausible on its face." *Id*.

17   at 570. That is, the pleadings must contain factual allegations "plausibly suggesting (not merely

18   consistent with)" a right to relief. *Id*. at 1557 (noting that this requirement is consistent with Fed. R.

19   Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled to relief").

20       **B.      Whether Judicial Estoppel Bars Claims Asserted by Herenia Perez**

21       Judicial estoppel bars a party from swearing to divergent positions in separate judicial

22   proceedings, and it exists to prevent calculated manipulation of the judicial system. *Johnson Service*

23   *Co. v. Transamerica Ins. Co.*, 485 F.2d 164, 175 (5th Cir. 1973). Judicial estoppel differs from

24   collateral estoppel, res judicata, and equitable estoppel insofar as "judicial estoppel focuses

25   exclusively on preventing the use of inconsistent assertions that would result in an 'affront to judicial

26   dignity' and 'a means of obtaining unfair advantage.'" *Rockwell Intern. Corp. v Hanford Atomic*

27   *Metal Trades Council*, 851 F.2d 1208, 1210 (9th Cir. 1988). The doctrine of judicial estoppel applies

28   if the following requirements are met: 1) a party's position in a later proceeding is "clearly

**United States District Court**
For the Northern District of California

1  inconsistent" with its earlier position; 2)  a party achieved success in the prior proceeding in

2  persuading the court to accept or rely on the party's earlier position such that allowing the party to

3  take a different position creates a  risk of inconsistent court determinations; and 3) the party asserting

4  the inconsistent position would achieve an unfair advantage if not estopped.  *Hamilton v. State Farm*

5  *Fire & Casualty Co.*, 270 F.3d 778, 782-783 (9th Cir. 2001).

6        Here, the *Hamilton* requirements are not met.  In particular, Defendants cannot establish that

7  the bankruptcy court accepted or relied upon Plaintiff Herenia Perez's representation as to whether

8  she had any claims.  Indeed, Wells Fargo concedes that the bankruptcy action filed by Herenia Perez

9  was dismissed as a result of Ms. Perez's failure to submit required documents and appear at required

10  hearings.  As a result, there is no danger of inconsistent outcomes.  Further, in light of the fact that

11  the bankruptcy proceeding was dropped before any bankruptcy plan was adopted, there is no

12  unfairness to Wells Fargo that will result from allowing Ms. Perez to proceed with the claims in this

13  case.

14        The Court rejects the assertion by Wells Fargo that the second *Hamilton* factor is met because

15  the Perezes benefitted from the bankruptcy proceeding by obtaining an automatic stay against their

16  creditors, including Wells Fargo. A stay would have been entered in the bankruptcy action regardless

17  of whether Ms. Perez listed any claims in her bankruptcy filings.  As a result, Wells Fargo's reliance

18  on the bankruptcy stay to show that the court adopted or  relied on Ms. Perez's non-disclosure of the

19  claims asserted here is misplaced.

20        **C.      Trustee Liability**

21        Loanstar contends that Plaintiffs' claims against it fail on the basis that the only conduct

22  alleged by Loanstar is privileged under Cal. Civ. Code Sections 47 and 2924(b) & (d).  As to the

23  California state law claims asserted by Plaintiffs, the Court agrees.

24        The court in *Kachlon v. Markowitz* explains that Section 2924(d) "makes the recording of the

25  notice of default by the beneficiary, and any other statutorily authorized act of the beneficiary acting

26  as trustee, a privileged communication under section 47."  168 Cal. App. 4th 316, 340 (2008).

27  Section 47, in turn, creates a privilege for "a communication, without malice, to a person interested

28  therein."  Cal. Civ. Code Section 47(c)(1).  Section 2924(b) also creates the following privilege for

1   trustees:

2         In performing acts required by this article, the trustee shall incur no liability for any good
      faith error resulting from reliance on information provided in good faith by the beneficiary
3     regarding the nature and the amount of the default under the secured obligation, deed of trust,
      or mortgage.

4

5   Cal. Civ. Code Section 2924(b).  These privileges are state litigation privileges and therefore do not

6   apply to federal claims.  *Selby v. Bank of America, Inc.*, 2010 WL 4347629, at *2 n.1 (S.D.Cal.,

7   October 27, 2010).   In *Selby*, the court explained:

8         California courts have held that the protection granted to nonjudicial foreclosure proceedings
      is the qualified, common interest privilege of Cal. Civ.Code § 47(c)(1). A state litigation
9     privilege, however, does not defeat a federal cause of action. See *Pardi v. Kaiser Found.
      Hosp*., 389 F.3d 840, 851 (9th Cir.2004) (holding that California's litigation privilege did not
10    bar retaliation claim under ADA); *OEI v. N Star Capital Acquisitions, LLC*, 486 F.Supp.2d
      1089 (C.D.Cal.2006) (holding that California's litigation privilege did not grant immunity in
11    connection with FDCPA claim).

12  *Id*.

13        In the Complaint, Plaintiffs do not allege that Loanstar acted with malice or that it did not rely

14  in good faith on the information that was provided to it by Wells Fargo.  Nor did Plaintiffs address in

15  their Opposition brief Loanstar's contention that all of the conduct alleged in the Complaint is

16  privileged.  Finally, at oral argument, when questioned by the Court on this issue, Plaintiffs were not

17  able to identify any conduct that would fall outside of the immunity afforded a trustee as to its

18  involvement in a nonjudicial foreclosure sale.  Accordingly, the Court finds that all of the claims that

19  are asserted by Plaintiffs under California state law, that is, all of Plaintiffs' claims except their claim

20  under TILA (Claim One), fail as to Loanstar on the basis of the privileges discussed above.

21        **D.      Claim One (TILA)**

22            **1.      Legal Standard**

23        The Truth in Lending Act ("TILA") is a consumer protection statute that aims to "avoid the

24  uninformed use of credit."  15 U.S.C. §1601(a).  TILA "has the broad purpose of promoting 'the

25  informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers."  *Ford

26  Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980) (quoting 15 U.S.C. § 1601).  The statute

27  "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with

28  things like finance charges, annual percentage rates of interest, and the borrower's rights."  *Beach v.*

**United States District Court**
For the Northern District of California

17

1   *Ocwen Fed. Bank*, 523 U.S. 410, 412  (1998) (citing 15 U.S.C. §§ 1631, 1632, 1635 & 1638).  .

2   TILA disclosure requirements do not apply to forbearance or loan modification agreements that

3   simply reduce the interest rate and payment schedule of a loan.  *See Norton-Griffiths v. Wells Fargo*

4   *Home Mortgage*, 2011 WL 61609, at * 5-7 (D. Vt. Jan. 4, 2011).

5          While TILA provides for both rescission and damages, it expressly excludes residential

6   mortgage transactions from its rescission provisions.  15 U.S.C. § 1635(e)(1) (excluding "residential

7   mortgage transaction" from rescission provision); *see also* 15 U.S.C. § 1602(w) (defining "residential

8   mortgage transaction" as "a transaction in which a mortgage, deed of trust, purchase money security

9   interest arising under an installment sales contract, or equivalent consensual security interest . . .

10  created or retained against the consumer's dwelling to finance the acquisition or initial construction of

11  such dwelling); *Kakogu v. American Brokers Conduit*, 2010 WL 1265201, at *3-4 (N.D. Cal. March

12  30, 2010) (holding that purchase money mortgage loan was exempt from TILA rescission provision).

13  Nonetheless, TILA's disclosure requirements apply to residential mortgage transactions and

14  violations of these disclosure requirements can give rise to a claim for damages.  *See In re*

15  *Schweitzer*, 354 B.R. 272 280-281 (D. Id. 2006) (holding that while plaintiff could not assert

16  rescission claim under TILA because loan was for residential mortgage, the debtor nevertheless had

17  "other important rights under the law," citing 15 U.S.C. §§  1601(a) and 1638(b)).

18          The statute of limitations for a damages claim under TILA is one year and generally runs

19  from the date the loan documents are executed.  15 U.S.C. § 1640(e); *See Meyer v. Ameriquest*

20  *Mortg. Co.,* 342 F.3d 899, 902 (9th Cir. 2003).   Under the discovery rule, the limitations period does

21  not begin to run until the plaintiff discovers (or reasonably should discover) that he has been injured.

22  *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008).  In addition, the

23  statute of limitations may be equitably tolled if "despite all due diligence, a plaintiff is unable to

24  obtain vital information bearing on the existence of his claim."  *Santa Maria v. Pacific Bell*, 202 F.3d

25  1170, 1178 (9th Cir. 2000).

26              **2.    Application to Facts**

27          Because Plaintiffs fail to allege facts showing that their TILA claim is timely, the claim fails

28  under Rule 12(b)(6).

**United States District Court**
For the Northern District of California

1    The loan at issue in this case was originated in August 2007.  Plaintiffs initiated this action

2    over three years later, on April 6, 2011.  Therefore, Plaintiffs' TILA claim is timely only if Plaintiffs

3    can establish that the statute of limitations was equitably tolled or did not begin to run at the time the

4    loan was originated under the discovery rule.  Plaintiffs, however, have alleged no facts supporting

5    the application of either doctrine.  In particular, the allegation that they did not understand the terms

6    of the contract they signed, whether due to language or lack of familiarity with the law, does not

7    establish that Plaintiffs could not have learned of their claims through the exercise of due diligence.

8    The Court rejects Plaintiffs' assertion that the claim is timely because they did not discover their

9    TILA claim until they retained counsel.  "A party is presumed to be familiar with the contents of any

10   document that bears the person's signature."  *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or.App. 610,

11   616 (2007) (citations omitted).  Further, Plaintiffs have not alleged any facts that would show that

12   Plaintiffs could not have reasonably discovered the facts that support their TILA claim until more

13   than three years later when they retained counsel in this action, given that it is based on the express

14   terms of the loan that Plaintiffs signed.

15   Because Plaintiffs have failed to allege any facts showing that their TILA claim is timely,

16   Claim One is dismissed under Rule 12(b)(6) as to both Defendants.[3]

17   **E.    Claim Two (UCL)**

18   **1.    Legal Standard**

19   California Business & Professions Code Sections 17200 *et seq.* prohibits "unfair

20   competition," which is defined as any "unlawful, unfair or fraudulent business act or practice."  To

21   establish a violation of  Section 17200, a plaintiff may establish a violation under any one of these

22   prongs.  To state a cause of action based on an unlawful business act or practice under the UCL, a

23   plaintiff must allege facts sufficient to show a violation of some underlying law.  *People v. McKale*,

24   25 Cal.3d 626, 635 (1979).  A "fraudulent" business act or practice is one in which members of the

25   public are likely to be deceived.  *Weinstat v. Dentsply Intern., Inc.,* 180 Cal.App. 4th 1213, 1223 n.8

26   _____

27   [3]The claim fails as to Loanstar for the additional reason that Loanstar, as a substituted trustee
     appointed after the closing of the loan, is not a "creditor" as defined under the statute. *See* 15 U.S.C. §
28   1602(f).

19

United States District Court

For the Northern District of California

1  (2010)(citations omitted). "'Fraudulent,' as used in the statute, does not refer to the common law tort

2  of fraud but only requires a showing members of the public 'are likely to be deceived.'" *Olsen v.*

3  *Breeze*, 48 Cal.App.4th 608, 618 (1996).  UCL claims premised on fraudulent conduct trigger the

4  heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *Kearns v. Ford*

5  *Motor Co.*, 567 F.3d 1120, 1125 (9th Cir.2009).

6       Finally, while there is disagreement among California courts regarding the definition of

7  "unfair" business practices, three tests have been applied, as the court in *Phipps  v. Wells Fargo*

8  explains:

9      In consumer cases, such as this, the California Supreme Court has not established a definitive
    test to determine whether a business practice is unfair. *Drum v. San Fernando Valley Bar*

10      *Ass'n*, 182 Cal.App.4th 247, 256, 106 Cal.Rptr.3d 46 (2010). A split of authority has
    developed among the California Courts of Appeal, which have applied three tests for

11      unfairness in consumer cases. *Drum*, 182 Cal.App.4th at 256, 106 Cal.Rptr.3d 46.

12      The test applied in one line of cases requires "that the public policy which is a predicate to a
    consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to

13      specific constitutional, statutory, or regulatory provisions." *Drum*, 182 Cal.App.4th at 256,
    106 Cal.Rptr.3d 46 (citing *Bardin v. Daimlerchrysler Corp.*, 136 Cal.App.4th 1255,

14      1260–1261, 39 Cal.Rptr.3d 634 (2006); *Davis v. Ford Motor Credit Co.*, 179 Cal.App.4th at
    581, 595–596, 101 Cal.Rptr.3d 697 (2009); *Gregory v. Albertson's Inc.*, 104 Cal.App.4th 845,

15      854, 128 Cal.Rptr.2d 389 (2002).

16      . . .

17      A second line of cases applies a test to determine whether the alleged business practice "is
    immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and

18      requires the court to weigh the utility of the defendant's conduct against the gravity of the
    harm to the alleged victim." *Drum*, 182 Cal.App.4th at 257, 106 Cal.Rptr.3d 46 (citing

19      *Bardin*, 136 Cal.App.4th at 1260, 39 Cal.Rptr.3d 634; *Davis*, 179 Cal.App.4th at 594–595,
    101 Cal.Rptr.3d 697)).

20      . . .

21      The test applied in a third line of cases draws on the definition of "unfair" in section 5 of the

22      Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that "(1) the
    consumer injury must be substantial; (2) the injury must not be outweighed by any

23      countervailing benefits to consumers or competition; and (3) it must be an injury that
    consumers themselves could not reasonably have avoided." *Drum*, 182 Cal.App.4th at 257,

24      106 Cal.Rptr.3d 46 (citing *Davis*, 179 Cal.App.4th 597–598, 101 Cal.Rptr.3d 697; *Camacho*

25      *v. Automobile Club of Southern California*, 142 Cal.App.4th 1394, 1403, 48 Cal.Rptr.3d 770
    (2006)).

26  2011 WL 302803, at *16 (E.D.Cal., Jan. 27, 2011).

27

28

United States District Court

For the Northern District of California

### 2. Application of Law to Facts

#### a. Unlawful Conduct

In order to state a claim under the UCL based on unlawful conduct, Plaintiffs must allege facts sufficient to establish a violation of some law.  In their Complaint, Plaintiffs assert that Defendants have violated TILA, Cal Civ. Code §§ 2923.5 and 1632, and Cal. Fin. Code §§ 4970-4979.8.  As stated elsewhere in this Order, however, the Court finds that Plaintiffs have not stated a claim as to any of these violations.  For this reason, Plaintiffs' UCL claim also fails to the extent it is based on these alleged violations.

To the extent Plaintiffs may seek to amend their complaint to assert a UCL claim based on false advertising under Cal. Civ. Code Section 17500, a theory that was raised for the first time in Plaintiffs' Opposition brief, Plaintiffs are cautioned that in order to state a claim on the basis of that statute, they will have to allege facts identifying specific statements, including facts showing how the statement were misleading.  *See Chua v. Barratt American*, 2010 WL 987020, at *3 (S.D.Cal.,Mar. 17, 2010) (dismissing claim for violation of Section 17500 based on general allegation that lender induced plaintiff to take loan by leading him to believe that he could afford payments because complaint failed to identify particular fraudulent statements or facts showing statements were misleading).

#### b. Fraudulent Conduct

In order to state a claim under the UCL based on fraudulent conduct, Plaintiffs must allege, with particularity, facts sufficient to establish that the public would likely be deceived by Defendants' conduct.  Plaintiffs have not met this standard because they have not identified specific deceptive statements or omissions made in connection with the origination of the Loan Agreement, or alleged facts showing why those specific statements or omissions would be likely to deceive the public. Therefore, Plaintiffs fail to state a claim based on fraudulent conduct.

#### c. Unfair Business Practices

Finally, Plaintiffs' conclusory allegations are insufficient to state a claim under the "unfair" business practice prong because they have not alleged facts showing that Defendants' conduct is unfair under any of the three tests set forth above.

1     Plaintiffs' UCL claim is dismissed for failure to state a claim as to both Defendants.[4]

2     **F.      Claim Three (Breach of Fiduciary Duty)**

3        As a general rule, under California law, "a financial institution owes no duty of care to a

4     borrower when the institution's involvement in the loan transaction does not exceed the scope of its

5     conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231

6     Cal.App.3d 1089, 1095-96 (1991) (citations omitted).  Thus, California courts have held that "[t]he

7     relationship between a lending institution and its borrower-client is not fiduciary in nature." *Id*. at

8     1093 n. 1(citing *Price v. Wells Fargo Bank*, 213 Cal.App.3d 465, 476-478 (1989)).  Similarly,

9     California courts have held, as a matter of law, that the trustee under a deed of trust "is not a true

10    trustee, and owes no fiduciary obligations; [it] merely acts as a common agent for the trustor and

11    beneficiary of the deed of trust." *Heritage Oaks Partners v. First American Title Ins. Co.*, 155

12    Cal.App.4th 339, 345 (2007) (citations omitted).

13        In California, the test for determining whether a financial institution exceeded its role as

14    money lender and thus owes a duty of care to a borrower-client involves "the balancing of various

15    factors, among which are (1) the extent to which the transaction was intended to affect the plaintiff,

16    (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4)

17    the closeness of the connection between the defendant's conduct and the injury suffered, (5) the

18    moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm."

19    *Nymark*.231 Cal. App. 3d  at 1098.  In *Nymark*, the court addressed whether a lender owed a duty of

20    care to the borrower with respect to determining whether the collateral offered to secure the loan was

21    sufficient.  *Id*. at 1096.  The court found that it did not, reasoning that the appraisal that was

22    conducted as part of the loan processing was conducted for the benefit of the lender and therefore, the

23

24    _____

        [4]The Court notes that in *Reyes v. Wells Fargo*, it concluded the plaintiffs in a purported class

25    action had stated a claim under the UCL based on the allegation that a Special Forbearance Agreement
      very similar to the one offered to Plaintiffs in this case constituted an unlawful business practice based

26    on California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act").  *See* 2011 WL 30759,
      (N.D.Cal., January 3, 2011).  The Court reaches a different result here because Plaintiffs in this action

27    have not based their UCL claim on the Special Forbearance Agreement but rather, on Defendants'
      alleged conduct in connection with the Loan Agreement.  Nor have they asserted a claim under the

28    Rosenthal Act, either as a free-standing claim or as the basis for their UCL claim.

United States District Court
For the Northern District of California

1    lender's involvement in the appraisal was within the scope of its role as a lender.  *Id.*

2          Plaintiffs have not alleged facts sufficient to establish a fiduciary duty on the part of Wells

3    Fargo or Loanstar.   In particular, as to Loanstar, Plaintiffs include no factual allegations that

4    Loanstar acted as anything other than a trustee under the deed of trust.   Similarly, Plaintiffs  fail to

5    allege that Wells Fargo engaged in conduct that would give rise to a fiduciary duty.   Accordingly,

6    Plaintiffs fail to state a claim for breach of fiduciary duty as to both Defendants.

7          **G.      Claims Four and Thirteen (Fraud and Misrepresentation)**

8          "The elements which must be pleaded to plead a fraud[5] claim are (a) misrepresentation (false

9    representation, concealment or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to

10   defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *Philipson &*

11   *Simon v. Gulsvig*, 154 Cal. App. 4th 347, 363 (2007) (quotations omitted).  Rule 9(b) of the Federal

12   Rules of Civil Procedure requires that "a party must state with particularity the circumstances

13   constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), the plaintiff must include

14   "the who, what, when, where, and how" of the fraud.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

15   1106 (9th Cir. 2003).  "The plaintiff must set forth what is false or misleading about a statement, and

16   why it is false."  *Decker v. Glenfed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994).  A claim for fraud must

17   be "specific enough to give defendants notice of the particular misconduct which is alleged to

18   constitute the fraud charged so that they can defend against the charge and not just deny that they

19   have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  The statute of

20   limitations for fraud under California law is three years.  Cal. Civ. Proc. Code § 335, 338(d).

21          Here, the Court finds that Plaintiffs' allegations based on misrepresentations made in

22   connection with the Loan Agreement are too conclusory to state a claim for fraud or

23   misrepresentation.  Plaintiffs have alleged generally that  Defendants' representatives made deceptive

24   statements to Plaintiffs in order to induce them to enter into an unsuitable loan agreement without

25   identifying any specific statements or alleging specific facts showing how the statements were

26   misleading. Accordingly, Plaintiffs fail to state a claim for fraud or misrepresentation as to both

27   _____

28          [5]Plaintiffs do not dispute that both claims are, in essence, fraud claims.  *See* Opposition at 7.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1 Defendants with respect to the Loan Agreement.

2      As a separate basis for dismissing these claims, the Court also finds that Plaintiffs' fraud and

3 misrepresentation claims are untimely to the extent they are based on statements that were allegedly

4 made in order to induce Plaintiffs to enter into the Loan Agreement because any such statements

5 would have been made more than three years before the action was filed.  Nor have Plaintiffs alleged

6 facts that would be sufficient to establish that these claims were timely under the discovery rule or the

7 doctrine of equitable tolling.

8      Finally, the claims also fail to the extent they are based on the allegation that Wells Fargo told

9 Plaintiffs in November 2008 that it would modify their loan.  Plaintiffs do not identify the time, place

10 or speaker who allegedly made this promise.  To the extent the Complaint is referring to the Special

11 Forbearance Agreement (dated October 20, 2008), Plaintiffs have not alleged facts showing that the

12 statements made in the letter were false at the time they were made or that the statements were made

13 with scienter and with the intent to defraud.

14      The Court finds that Plaintiffs fail to state a claim as to their claims for fraud and

15 misrepresentation as to both Defendants.

16

17 **H.      Claims Five and Six (Breach of Implied Covenant of Good Faith and Fair Dealing and Breach of Contract)**

18      **1.      Legal Standard**

19       The elements of a cause of action for breach of contract are: 1)  the existence of the contract;

20 2) performance by the plaintiff or excuse for nonperformance; 3)  breach by the defendant; and 4)

21 damages.  *First Commercial Mortgage Co. v. Reece*, 89 Cal.App.4th 731, 745 (2001).  A breach of

22 contract may be established on the basis of either an express provision of the contract or on the

23 implied covenant of good faith and fair dealing.  *See Storek & Storek, Inc. v. Citicorp Real Estate,*

24 *Inc.*, 100 Cal.App.4th 44, 55 (2002)(recognizing that "every contract imposes upon each party a duty

25 of good faith and fair dealing in the performance of the contract such that neither party shall do

26 anything which will have the effect of destroying or injuring the right of the other party to receive the

27 fruits of the contract").  An implied covenant of good faith and fair dealing cannot contradict the

28 express terms of a contract, however.  *Id.* (citing *Carma Developers (Cal.), Inc. v. Marathon*

1  *Development California, Inc.* 2 Cal.4th 342, 374 (1992)).  Further, because "the implied covenant

2  operates to protect the express covenants or promises of [a] contract . . .[it] cannot impose substantive

3  duties or limits on the contracting parties beyond those incorporated in the specific terms of [the

4  parties] agreement."  *McClain v. Octagon Plaza, LLC*, 159 Cal.App.4th 784, 805 (2008).

5      "Facts alleging a breach, like all essential elements of a breach of contract cause of action,

6  must be pleaded with specificity."  *Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal. App.4th 1, 5

7  (2007).  Thus, to state a claim for breach of the implied covenant of good faith and fair dealing, a

8  plaintiff must identify the specific contractual provision that was frustrated.  *See Lingad v. Indymac

9  Federal Bank*, 682 F.Supp.2d 1142, 1154 (2010).

10              **2.      Application to Facts**

11      Plaintiffs have not identified any specific contractual provision allegedly breached by

12  Defendants in support of their breach of contract claim.  Nor have they identified a specific

13  contractual provision that was frustrated in support of their claim for breach of the implied covenant

14  of good faith and fair dealing.  Therefore, Plaintiffs fail to state claims for breach of contract or

15  breach of the implied covenant of good faith and fair dealing as to both Defendants.

16      **I.      Claim Seven (Violation of Cal. Civ. Code Section 2923.5)**

17              **1.      Legal Standard**

18      Under Cal. Civ. Code Section 2923.5(a), a lender may not record a notice of default against a

19  borrower until at least thirty days after it has "contact[ed] the borrower in person or by telephone in

20  order to assess the borrower's financial situation and explore options for the borrower to avoid

21  foreclosure."  Further, under Section 2923.5(b), the lender must attach a declaration to the notice of

22  default attesting to the fact that it has contacted the borrower to explore options to avoid foreclosure.

23  Here, Plaintiffs allege that Defendants failed to comply with either requirement.

24              **2.      Application to Facts**

25      Although Plaintiffs allege that Defendants failed to contact them to explore options to avoid

26  foreclosure, allegations found elsewhere  in the complaint indicate that Plaintiffs *were* contacted prior

27  to foreclosure, resulting in the Special Forbearance Agreement.  Further, the Notice of Default

28  recorded on Plaintiffs' property included the required declaration.  *See* Loanstar RJN, Ex. B.  Finally,

1   the Court notes that Plaintiffs do not address this claim in their Opposition brief, implicitly conceding

2   that it fails to state a claim.

3          Plaintiffs' claim under Cal. Civ. Code Section 2923.5 fails to state a claim as to both

4   Defendants.

5       **J.      Claim Eight (Wrongful Foreclosure)**

6              **1.      Legal Standard**

7          Under California law, "an action to set aside a trustee's sale for irregularities in sale notice or

8   procedure should be accompanied by an offer to pay the full amount of the debt for which the

9   property was security." *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal.App.3d 575, 578 (1984); *see also*

10  *Karlsen v. Am. Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117 (1971) ("A valid and viable tender of

11  payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of

12  trust.").   Although courts have discretion to excuse this requirement where its application would be

13  inequitable, *see Pantoja v. Countrywide Home Loans*, 640 F. Supp. 2d 1177, 1184 (N.D. Cal. 2009),

14  Plaintiffs have not demonstrated that application of the tender rule would be inequitable here.

15         Plaintiffs' wrongful foreclosure claim fails as a matter of law as to both Defendants because

16  they have not alleged that they have offered to pay the full amount of their indebtedness. Nor have

17  Plaintiffs alleged facts suggesting that application of the tender rule should be excused as inequitable.

18

19         Plaintiffs fail to state a claim for wrongful foreclosure against both Defendants.

20      **K.      Claim Nine (Promissory Estoppel)**

21              **1.      Legal Standard**

22         A claim for promissory estoppel is based in equity, allowing for the enforcement of a

23  gratuitous promise, which under contract law would be unenforceable due to lack of consideration.  *C*

24  *& K Engineering Contractors v. Amber Steel Co.*, 23 Cal.3d 1, 10 (Cal.1978).  A claim for

25  promissory estoppel requires that the following elements be established: "(1) a promise clear and

26  unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance

27  must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by

28  his reliance." *Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal.App.3d 885, 890 (1976).

1        **2.**      **Application to Facts**

2        The Court finds that this claim is not adequately pled as to either Defendant.

3        With respect to Wells Fargo, the Court rejects Wells Fargo's assertion that this claim fails

4  because the Special Forbearance Agreement contains no enforceable promise on the part of Wells

5  Fargo that it would offer a loan modification to Plaintiffs if they made the special forbearance

6  payments.  Rather, there is at least a question of fact on this issue because the Terms and Conditions

7  of the Special Forbearance Agreement are ambiguous.  In particular, paragraph 2 states as follows:

8        2.      Step One: Payment must be made strictly in accordance with the enclosed payment
                  schedule and forbearance agreement conditions, this plan will take care of some of

9                    your delinquency.  This plan is an agreement to temporarily accept reduced payments
                  or maintain regular monthly payments during the plan specified below, please note the

10                    final delinquent balloon payment will be added back into the loan balance if approved
                  for the loan modification.  Step two: Upon successful completion of the outlined

11                    payments, your loan will be reviewed for a loan modification.  Step Three:  *Your loan
                  will be modified, unless your income or financial situation has changed*.  This may

12                    satisfy the remaining past due amount on your loan by changing one or more terms of
                  your loan.

13

14  Wells Fargo RJN, Ex. C.  When read in conjunction with the cover letter, which states that the

15  Special Forbearance Agreement is being offered "[b]ased on our telephone conversation and the

16  financial information you provided," Plaintiffs reasonably could have believed that Paragraph 2

17  meant  that they would be offered a loan modification unless their financial information had changed

18  from that which had been provided by Plaintiffs in connection with their loan modification request.

19  Therefore, the Court rejects Wells Fargo's assertion that the claim fails under Rule 12(b)(6) because

20  no enforceable promise is alleged.

21        The Court also rejects Wells Fargo's assertion that it is undisputed that Plaintiffs failed to

22  make the special forbearance payments.  Apparently, Wells Fargo is asserting that because Plaintiffs

23  did not make the required payments, they have not demonstrated that the second and third

24  requirements to establish promissory estoppel are met, namely, that Plaintiffs relied on the promise

25  and that their reliance was reasonable and foreseeable.  However, as discussed above in connection

26  with Wells Fargo's request for judicial notice, Plaintiffs alleged in their Complaint that they *did* make

27  the required payments and the letter Wells Fargo seeks to introduce to establish that they did not

28  cannot be considered at this stage of the case because it is not subject to judicial notice.  Thus,

1    Plaintiffs adequately allege that they reasonably and foreseeably relied on Wells Fargo's promise.

2         A more difficult question is whether Plaintiffs have adequately alleged the fourth required

3    element for promissory estoppel, that they were injured as a result of their reliance.  California courts

4    have found that where a lender has made a gratuitous promise to postpone foreclosure on a property,

5    the borrower may be able to establish injury as a result of reliance under some circumstances.  *See,*

6    *e.g., Garcia v. World Savings, FSB*, 183 Cal. App. 4th 1031 (2010).  In *Garcia*, for example, the court

7    held that a gratuitous oral promise to postpone a foreclosure sale gave rise to an enforceable promise

8    under the doctrine of promissory estoppel where the  borrowers had applied for an expensive loan

9    from a third party in order  to cure the default and had been told their house would not be sold before

10   that loan closed.  *Id.* at 1041.  The court explained that "[a]ppellants' actions in procuring a high cost,

11   high interest loan by using other property they owned as security is sufficient to support detrimental

12   reliance although it provided no particular benefit to respondent."  *Id.*

13        On the other hand, courts (including this Court) have held that where the only injury alleged

14   as a result of reliance is that the plaintiffs made payments that they were already obligated to make

15   under the loan contract, no claim for promissory estoppel is stated.  *See Reyes v. Walls Fargo*, 2011

16   WL 30759, at *5 (N.D.Cal., Jan. 3, 2011); *Newgent v. Wells Fargo Bank, N.A.*, 2010 WL 761236

17   (S.D. Cal. March 2, 2010) ("Plaintiff alleges that she made a payment that she would not have made

18   if she did not believe Wells Fargo was renegotiating her mortgage. Because Plaintiff was already

19   legally obligated to make payments on her mortgage, the Court concludes that the payment in

20   reliance on the promise that Wells Fargo would delay the trustee's sale was not detrimental").

21        Here, Plaintiffs have not alleged any injury as a result of their reliance on the Special

22   Forbearance Agreement except the payments themselves.  They do not allege any additional injury,

23   such as borrowing from a third party at a high rate of interest to make the payments, as is alleged in

24   *Garcia*.  Because Plaintiffs were already obligated to make payments under the Loan Agreement,

25   they have not alleged any facts showing reliance that was detrimental.  Therefore, the Court finds that

26   Plaintiffs fail to state a claim for promissory estoppel against Wells Fargo.

27        With respect to Loanstar, Plaintiffs have not alleged any of the elements of promissory

28   estoppel.  Therefore, their promissory estoppel claim against Loanstar fails as well.

1

2
      **L.**        **Claims Ten and Eleven (Negligence and Intentional Infliction of Emotional**
3
                **Distress )**

4
      Plaintiffs' claims for negligence and intentional infliction of emotional distress are based on

5
Defendants' alleged conduct in inducing Plaintiffs to enter into the 2007 Loan Agreement.  The

6
applicable statute of limitations for these claims is two years.  *See* Cal. Civ. Proc. Code Section

7
335.1.  Further, as discussed above, Plaintiffs have not alleged facts that would establish that the

8
discovery rule or the doctrine of equitable estoppel applies here.  Therefore, these claims fail under

9
Rule 12(b)(6) on the basis that they are untimely.

10
      **M.**        **Claim Twelve (Predatory Lending)**

11
      Plaintiffs' claim for predatory lending under California Financial Code §§ 4970-4979.8 is

12
based on Defendants' alleged conduct in inducing Plaintiffs to enter into the 2007 Loan Agreement.

13
The applicable statute of limitations for such a claim is three years under Cal. Civ. Proc. Code

14
Section 338(a).  Again, Plaintiffs have not alleged facts that would establish that the discovery rule or

15
the doctrine of equitable estoppel applies here.  Therefore, this claim fails under Rule 12(b)(6) as to

16
both Defendants on the basis that it is untimely.

17
      **N.**        **Claim Fourteen (Quiet Title)**

18
      As stated above, under California law, "an action to set aside a trustee's sale for irregularities

19
in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for

20
which the property was security." *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal.App.3d 575, 578 (1984);

21
*see also Karlsen v. Am. Sav. & Loan Assn*., 15 Cal.App.3d 112, 117 (1971) ("A valid and viable

22
tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a

23
deed of trust.").   Here, Plaintiffs have not alleged tender; nor have they alleged facts indicating that

24
they should be excused from compliance with the tender rule.  Therefore, Plaintiffs fail to state a

25
claim under Rule 12(b)(6) as to both Defendants.

26
      **O.**        **Claim Fifteen (Cal. Civ. Code Section 1632)**

27
      Plaintiffs' claim for violation of Cal. Civ. Code Section 1632 is based on Defendants' alleged

28
conduct in inducing Plaintiffs to enter into the 2007 Loan Agreement.  The applicable statute of

**United States District Court**
For the Northern District of California

1   limitations for such a claim is one year under Cal. Civ. Proc. Code Section 340(a).   Again, Plaintiffs

2   have not alleged facts that would establish that the discovery rule or the doctrine of equitable estoppel

3   applies here.   Therefore, this claim fails under Rule 12(b)(6) as to both Defendants on the basis that it

4   is untimely.

5   **IV.      CONCLUSION**

6         For the reasons stated above, all of Plaintiffs' claims are dismissed with leave to amend within

7   thirty (30) days of the date of this Order.

8         IT IS SO ORDERED.

9

10   Dated:  August 29, 2011

11

12

13   _____

14   JOSEPH C. SPERO
     United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

30