1

2                 IN THE UNITED STATES DISTRICT COURT

3             FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5

6

7 EUGENE PEREZ, et al.,                Case No.: C-11-02279 JCS

8           Plaintiffs,        **ORDER GRANTING PLAINTIFFS'**
**MOTION TO REMAND; DENYING**

9     v.                      **DEFENDANTS' MOTIONS TO**
**DISMISS**

10

11 WELLS FARGO BANK, N.A., et al.,

12          Defendants.

13 **I.     INTRODUCTION**

14       Plaintiffs Eugene Perez and Herenia Perez ("Mrs. Perez") ("Plaintiffs") allege four causes of

15 action against Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and First American Loanstar

16 Trustee Services LLC ("Loanstar") ("Defendants") arising out of the events surrounding the

17 foreclosure sale of Plaintiffs' real property located at 95 Monterey Drive, Daly City, California

18 ("Property").  Presently before the Court are three Motions:  (1) Plaintiffs' Motion to Remand Case to

19 State Court ("Motion to Remand"); (2) Wells Fargo's Motion to Dismiss Plaintiff's Second Amended

20 Complaint ("Wells Fargo Motion"); and (3) Loanstar's Motion to Dismiss Plaintiff's Second

21 Amended Complaint ("Loanstar Motion").  A hearing on the Motions was held on February 15, 2013

22 at 9:30 a.m.  For the reasons discussed below, the Court GRANTS Plaintiffs' Motion to Remand and

23 DENIES both Defendants' Motions to Dismiss.[1]

24 **II.    REQUESTS FOR JUDICIAL NOTICE**

25       Wells Fargo and Loanstar have each filed a request for judicial notice of various documents

26 that they are assert are either matters of public record or directly referenced in Plaintiffs' Second

27 Amended Complaint ("SAC").  *See* Docket Nos. 62 & 65 (hereinafter "Wells Fargo RJN" and

28

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1   "Loanstar RJN").  Plaintiffs have not objected to Defendants' requests or challenged the authenticity

2   of any of the attached documents.  Each of the documents is either a public record or is referenced in

3   the SAC.  Accordingly, the Court takes judicial notice of all of the documents offered in Defendants'

4   requests for judicial notice pursuant to Rule 201 of the Federal Rule of Evidence.  The Court may

5   consider the documents of which it takes judicial notice, along with the allegations of Plaintiff's

6   Complaint, on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See*

7   *Catholic League for Religious and Civil Rights v. City and County of San Francisco*, 464 F.Supp.2d

8   938, 941 (N.D. Cal. 2006).

9   **III.      BACKGROUND**

10          **A.      The Second Amended Complaint**

11          Plaintiffs state that Mrs. Perez refinanced the Property on August 17, 2007 by borrowing

12  $525,000.00 from Wells Fargo.  SAC, ¶ 10.  The 8.5% interest only loan was secured by a deed of

13  trust on the Property.  *Id*.  The monthly interest only payment was $3,718.75.  *Id*.

14          As of October 2008, Mrs. Perez had missed two payments on the note.  *Id*. at ¶ 11.  Wells

15  Fargo offered her a forbearance agreement under which it would agree to modify the loan if she made

16  three monthly payments of $4,917.59 beginning on November 30, 2008, and one payment of

17  $8,432.94 on February 28, 2009.  *Id*.  Plaintiffs contend that the forbearance agreement, with its

18  increased monthly payments, was an unconscionable contract of adhesion.  *Id*. at ¶ 12.  Mrs. Perez

19  made the first two payments, but was unable to make the last two payments.  *Id*.

20          On March 18, 2009, Wells Fargo recorded a notice of default.  *Id*. at ¶ 13.  A trustee's sale was

21  scheduled for July 9, 2009.  *Id*.  The sale was postponed after Plaintiffs filed a number of bankruptcy

22  petitions beginning in April 2009.  *Id*.  At some point, the sale was set for November 24, 2009.  *Id*. at

23  ¶ 14.  In November 2009, Mrs. Perez retained an attorney, John P. Skowronski ("Skowronski") to

24  assist her in applying for a loan modification.  *Id*.  Pursuant to Wells Fargo's policy, the sale was

25  postponed a number of times pending its consideration of Mrs. Perez's application.  *Id*. at ¶¶ 14-15.

26  The date was pushed back to December 14, 2009, then to January 25, 2010, then to February 24,

27  2010.  *Id*. at ¶ 15.

28

On February 11, 2010, a Wells Fargo agent named Amanda informed Skowronski that Plaintiffs' property was out of foreclosure.  *Id.* at ¶ 16.  Wells Fargo delayed in processing Mrs. Perez's application for a loan modification until June 17, 2010.  *Id.* at ¶ 17.  At that point, a Wells Fargo manager named Jost Farber notified Skowronski that the case was being transferred from Amanda to Kelly.  *Id.*  That same day, Kelly requested documents from Mrs. Perez.  *Id.*  On June 22, 2010, Dr. Nicholas Agbabiaka ("Agbabiaka") faxed Wells Fargo the requested documents on Mrs. Perez's behalf.  *Id.* at ¶ 18.  The next day, June 23, 2010, Agbabiaka called Kelly to confirm that he had faxed the requested documents to the correct number.  *Id.* at ¶ 19.

At some point, the foreclosure sale was rescheduled for June 28, 2010.  *See id.*  During the June 23, 2010 phone call, Kelly confirmed to Agbabiaka that the June 28, 2010 foreclosure sale had been canceled.  *Id.*  On June 26, 2010, Agbabiaka called Loanstar's status line to check the status of the June 28, 2010 foreclosure sale.  *Id.* at ¶ 20.  The recorded message stated that the sale had been canceled.  *Id.*  Agbabiaka, Mrs. Perez, and Agbabiaka's associate Alexander Nixon heard the recorded message.  *Id.*  Even so, the foreclosure sale was held on June 28, 2010.  *Id.* at ¶ 21.

Plaintiffs allege that there were no bidders at the foreclosure sale, so the property reverted to Wells Fargo.  *Id.*  A trustee's deed was recorded on July 2, 2010.  *Id.*  At the time of the sale, Plaintiffs allege that Wells Fargo stated that Mrs. Perez owed $617,953.10 on the loan.  *Id.*  Plaintiffs contend that the fair market value of the house on the date of the sale was $740,000.00.  *Id.* at ¶ 24.  Wells Fargo ultimately sold the house to a third party on or about March 30, 2011 for approximately $645,000.00.  *Id.* at ¶ 25.

In a letter dated August 10, 2010, Plaintiffs contend that Wells Fargo notified Mrs. Perez that intended to modify her loan by reducing the interest rate such that her interest only payment was going to be reduced by $1,093.75 to $2,625.00.  *Id.* at ¶ 22.  Plaintiffs were evicted from the Property in or around December 2010, and were unable to collect all of their personal belongings.  *Id.* at ¶ 23.

Plaintiffs allege four causes of action:

(1)     Violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), California Civil Code Sections 1788, *et seq.*, by Defendant Wells Fargo:   Plaintiffs contend that Wells Fargo was a debt collector engaged in debt collection practices within the meaning of the

Rosenthal Act because it was collecting on a mortgage debt pursuant to the terms of the loan. *Id.* at ¶ 28. Plaintiffs allege that Wells Fargo knowingly and willfully violated the Rosenthal Act by using false, deceptive, and misleading statements in connection with its collection of Plaintiffs' debt. *Id.* at ¶ 29. Plaintiffs base their claim on the allegation that Wells Fargo falsely told their agent that the sale scheduled for June 28, 2010 had been canceled thereby deceiving and misleading them into believing that the sale would not proceed. *Id.* at ¶¶ 30-31. Plaintiffs contend that this statement caused them to lose equity in their property, to lose their personal property, and to suffer severe emotional distress. *Id.* at ¶ 32.

(2) <u>Violation of California Business and Professions Code Sections 17200, *et seq.*</u> ("UCL"), by both Defendants: Plaintiffs allege that Wells Fargo engaged in unfair and fraudulent business practices in violation of the UCL when it induced Mrs. Perez to enter into the forbearance agreement as a means of curing a two-month delinquency. *Id.* at ¶ 35. Plaintiffs contend that Wells Fargo knew or should have known that Mrs. Perez could not afford the higher forbearance payments so she was bound to default on the arrangement. *Id.* Plaintiffs also contend that Wells Fargo knew or should have known that it would be able to commence foreclosure proceedings as soon as the note was three months delinquent. *Id.*

Plaintiffs further allege that Wells Fargo engaged in unfair, fraudulent, and unlawful business practices in violation of the Rosenthal Act when its agent falsely told Mrs. Perez's agent that the trustee sale scheduled for June 28, 2010 had been canceled pending a decision on her application for a loan modification. *Id.* at ¶¶ 36, 38. Similarly, Plaintiffs allege that Loanstar engaged in unfair, fraudulent, and unlawful business practices in violation of the Rosenthal Act when it falsely notified Plaintiffs, via a recorded message, that the June 28, 2010 trustee's sale had been canceled. *Id.* at ¶¶ 37-38.

Plaintiffs claim that Defendants UCL violations caused them to lose equity in their property, lose personal property, and suffer severe emotional distress. *Id.* at ¶ 39.

(3) <u>Wrongful Foreclosure, California Civil Code Sections 2924, *et seq.*, by both Defendants</u>: Plaintiffs allege that Defendants violated the notice provisions of California Civil Code section 2924 by proceeding with the foreclosure sale even though they had given notice that the June

United States District Court
Northern District of California

1    28, 2010 sale had been canceled.  *Id*. at ¶¶ 42-43.  Plaintiffs claim that this caused them to lose equity

2    in their property, lose personal property, and suffer severe emotional distress.  *Id*. at ¶ 44.

3        (4)    <u>Negligence by Wells Fargo</u>:  Plaintiffs allege that Wells Fargo had a duty to use

4    reasonable care in processing Mrs. Perez's application for a loan modification.  *Id*. at ¶ 45.[2]  Plaintiffs

5    allege that Wells Fargo breached that duty by selling Plaintiffs' Property at the trustee sale even

6    though Wells Fargo was still considering Mrs. Perez's application for a loan modification and told her

7    agent that the sale had been canceled.  *Id*. at ¶ 46.  Plaintiffs claim that, as a proximate result of this

8    negligence, they lost equity in their property, lost personal property, and suffered severe emotional

9    distress.  *Id*. at ¶ 47.

10       **B.    Motion to Remand**

11           **1.    Motion**

12       Plaintiffs move to remand the proceedings to state court.  First, Plaintiffs argue that the Court

13   retains no federal question jurisdiction over this case because the Court dismissed Plaintiffs' lone

14   federal cause of action, a Truth in Lending Act ("TILA") claim, and that claim is not put forward in

15   the SAC.  Motion to Remand, 3, 6-7.  Second, Plaintiffs contend that no diversity jurisdiction exists

16   because Wells Fargo is a citizen of California and South Dakota.  *Id*. at 4. (citing *Horton v. Bank One,*

17   *N.A.*, 387 F.3d 426, 436 (5th Cir. 2004) (national bank is a citizen of the state listed in its articles of

18   association and the state where its principal place of business is located);  *Firstar Bank v. Faul*, 253

19   F.3d 982, 994 (7th Cir. 2001) (same)).

20       Third, Plaintiffs argue that, because the federal claim was dismissed and diversity is lacking,

21   the Court must decide whether to exercise supplemental jurisdiction or to remand the case to state

22   court.  *Id*. at 7 (citing *Millar v. Bay Area Rapid Transit Dist.*, 236 F.Supp.2d 1110, 1119 (N.D. Cal.

23   2002)).  Plaintiffs contend that the relevant factors – judicial economy, convenience, fairness, and

24   comity – militate in favor or remand.  *Id*. at 8 (citing *Millar*, 236 F.Supp.2d at 1119).  Plaintiffs state

25   that the case is about a year from trial because no discovery has been conducted after the filing of the

26   SAC, and trial preparation should be conducted in state court as state law will apply.  *Id*. at 8-10.

27   Plaintiffs contend that fairness considerations also favor remand, because the federal law for

28

---

[2] The SAC contains two paragraphs numbered 45.  This citation refers to the second of those paragraphs.

United States District Court
Northern District of California

1    facilitating settlements is more favorable to Defendants whereas the state law for facilitating

2    settlements is more balanced.  *Id.* at 10-11 (citing Cal. Code Civ. P. § 998; Fed. R. Civ. P. § 68).

3    Plaintiffs argue that convenience does not cut either way, as the relevant courthouses are within thirty

4    miles of each other.  *Id.* at 11.  Finally, Plaintiffs state that they did not engage in forum shopping.  *Id.*

5    at 11-12.

### 2.    Opposition

7         Wells Fargo opposes the Motion to Remand for two reasons.[3]  First, Wells Fargo contends that

8    there is complete diversity among the parties.[4]  Wells Fargo's Opposition to Motion to Remand

9    ("Opposition to Remand"), 3-17.

10        Wells Fargo contends that it is a citizen of South Dakota, not California.  *Id.* at 3, 13-14 (citing

11   a number of District Court opinions in California reaching the same conclusion).  Wells Fargo relies

12   on *Wachovia Bank v. Schmidt*, 546 U.S. 303, 317 n.9, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006).  *Id.*  In

13   *Schmidt*, the Supreme Court held that a national bank is a citizen of the state in which its main office,

14   as set forth in its articles of incorporation, is located.  *Id.*  Wells Fargo's main office, as set forth in its

15   articles of incorporation, is located in Sioux Falls, South Dakota.  *Id.*  Wells Fargo acknowledges that

16   *Schmidt* did not decide whether a citizen of a second state wherein its principal place of business is

17   located.  *Id.* at 4.

18        Wells Fargo argues that *Schmidt* abrogates *American Surety Co. v. Bank of California*, 133

19   F.2d 160 (9th Cir. 1943).  *Id.* at 5-7.  *American Surety*, Ninth Circuit authority holding that a national

20   bank is only a citizen of the state in which its principal place of business is located.  *Id.*  Wells Fargo

21   argues that this conclusion is irreconcilable with the *Schmidt* court's holding that a national bank is a

22   citizen of the state where its main office is located, as identified in its articles of incorporation.  *Id.* at

23   7.  In addition, Wells Fargo contends that *American Surety* was abrogated by statute, as 12 U.S.C. §

24   36(g)(3)(B) now identifies the term "home State" to mean "the State in which the main office of a

25   national bank is located."  *Id.* at 8.  Wells Fargo notes, in particular, that "State" is used in the

26   singular.  *Id.*  Wells Fargo proceeds to argue that *American Surety* was wrongly decided because, at

27   the time, the principal place of business test was not used for corporations.  *Id.* at 9 (citing *Hertz Corp.*

---

28   [3] Loanstar did not file an opposition to the Motion to Remand.
     [4] Wells Fargo does not argue that federal question jurisdiction exists in this case.

*v. Friend*, 559 U.S. 77, 130 S.Ct. 1181, 1187-1190, 175 L.Ed.2d 1029 (2010)).  Finally, Wells Fargo contends that *American Surety* merely assumed the principal place of business test was the standard for determining a national bank's citizenship.  *Id*. at 11.

Wells Fargo implicitly concedes that Loanstar is a citizen of California.  Wells Fargo argues that Loanstar's citizenship should be disregarded because it was either fraudulently joined or it is a nominal defendant.  *Id*. at 14-17.  Wells Fargo argues that Loanstar was fraudulently joined because (1) there is no possibility Plaintiffs will establish a cause of action in state court against Loanstar; and (2) Plaintiffs have little interest in prosecuting a claim against Loanstar but strategically amended their First Amended Complaint to bring Loanstar back into the lawsuit to destroy diversity jurisdiction.  *Id*. at 14-16 (citing *Moreno v. Wells Fargo*, 2011 WL 6372637, at *5-*6 (N.D. Cal. Dec. 20, 2011)).  Wells Fargo alternatively contends that Loanstar is a nominal defendant.  *Id*. at 16-17.  Wells Fargo states that a nominal defendant is one, such as a trustee, that holds the subject matter of the litigation in a subordinate or possessory capacity and is joined to facilitate collection.  *Id*. at 16 (citing *S.E.C. v. Colello*, 139 F.3d 674, 676 (9th Cir. 1998)).  Wells Fargo concedes that substantive allegations against the trustee can mean that the trustee is no longer a nominal party.  *Id*. (citing *Beiermann v. JP Morgan Chase Bank, N.A.*, 2012 WL 1377094, at *2 (W.D. Wash. Apr. 19, 2012)).  Wells Fargo argues that there are insufficient substantive allegations against Loanstar to make it any more than a nominal party.  *Id*. at 17.

Second, Wells Fargo argues that, if the Court finds diversity jurisdiction is lacking, it should exercise its supplemental jurisdiction over this case.  *Id*. at 17-18.  Wells Fargo states that this is proper because (1) the complaint has been amended twice before this Court; (2) there would be a significant delay before a demurrer would be heard in state court; and (3) Wells Fargo has put substantial effort and resources into litigating this case for a prolonged period of time and remand would force them to begin anew.  *Id*. at 18.

### 3.      Reply

Plaintiffs contend that the *Schmidt* court would have held that the principal place of business standard applies to national banks if it had been required to reach the issue.  Plaintiff's Reply in Support of Motion to Remand, 1-6.  Plaintiffs argue that this result would put national banks on equal

United States District Court
Northern District of California

footing with state banks and other state-incorporated entities. *Id*. at 4-5. In addition, Plaintiffs contend that *American Surety* remains binding precedent. *Id*. at 6-10 (citing a number of California District Court opinions following *American Surety* after *Schmidt* was decided). Plaintiffs state that only one other Ninth Circuit case addressed the issue of a national bank's citizenship for diversity purposes. *Id*. at 7. That case followed *American Surety*. *Id*. at 7 n.1 (citing *Bank of California, N.A. v. Twin Harbors Lumber Co.*, 465 F.2d 489 (9th Cir. 1972) ("The Bank, for diversity purposes, is a 'citizen' of California")).

Next, Plaintiffs contend that Loanstar was not strategically returned to the case for the purposes of defeating diversity. *Id*. at 12. Plaintiffs argue that their attorney was unaware of Loanstar's citizenship until it was addressed in Wells Fargo's Opposition. *Id*. Plaintiffs state that they are now aware that Loanstar is a California citizen. *Id*. at 11 (citing Declaration of Ronald W. Carter, ¶¶ 2-3). In addition, Plaintiffs argue that they can state a claim against Loanstar, which is more than a nominal defendant, because Loanstar announced that the sale was canceled before executing the sale. *Id*. at 13.

**C.    Motions to Dismiss**

**1.    Wells Fargo Motion**

(1)    <u>Rosenthal Act</u>: Wells Fargo states that Plaintiffs' Rosenthal Act claim is based on the allegation that Wells Fargo "falsely told Mrs. Perez's agent that the trustee that was scheduled for June 28, 2010, had been cancelled pending a decision on her application for a loan modification." Wells Fargo Motion, 7 (citing SAC, ¶ 30). Wells Fargo argues that this claim fails for two reasons. First, Wells Fargo contends that the Rosenthal Act claim fails because foreclosure related actions do not implicate the Act. *Id*. (citing *Reyes v. Wells Fargo Bank*, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011) ("the mere allegation that a defendant foreclosed on a deed of trust does not implicate the Rosenthal Act")). Wells Fargo concedes that a remedy may exist under the Rosenthal Act where the alleged debt collection activities go "beyond the scope of the ordinary foreclosure process." *Id*. at 7-8 (quoting *Walters v. Fidelity Mortg. of Cal., Inc.*, 720 F.Supp.2d 1185 (E.D. Cal. 2010) (involving a "pattern or improper conduct")). Wells Fargo argues that it has not engaged in debt collection

United States District Court
Northern District of California

1  activities beyond the scope of the ordinary foreclosure process because its actions amounted to several

2  attempts to assist Plaintiffs in avoiding foreclosure.  *Id*. at 8.

3          Second, Wells Fargo argues that any statement it made to the effect that the June 28, 2010

4  foreclosure sale was canceled amounted to a gratuitous oral promise that is unenforceable under the

5  statute of frauds.  *Id*. at 8-10 (citing *Mehta v. Wells Fargo Bank, N.A.*, 737 F.Supp.2d 1185, 1197

6  (S.D. Cal. 2010)).  Wells Fargo also notes that Plaintiffs have not alleged how they would have

7  modified their behavior absent the alleged misinformation.  *Id*. at 9.  Wells Fargo contends that

8  Plaintiffs would have been unable to do anything to prevent foreclosure, given their financial

9  circumstances.  *Id*.

10         (2)       UCL:  Wells Fargo argues that Plaintiffs failed to state a claim under the UCL for four

11  reasons.  *Id*. at 10-12.  First, Wells Fargo argues that Plaintiffs seek damages, but damages are

12  unavailable under the statute.  *Id*. at 10 (citing *Nat'l Rural Telecomms. Co-op v. DIRECTV, Inc.*, 319

13  F.Supp.2d 1059, 1078 (C.D. Cal. 2003); *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1266, 10

14  Cal.Rptr.2d 538, 833 P.2d 545 (1992); *Oracle Corp. v. DrugLogic, Inc.*, 2011 WL 5576267, at *9

15  (N.D. Cal. Nov. 16, 2011)).

16         Second, Wells Fargo contends that any oral representation by Wells Fargo or Loanstar that the

17  June 28, 2010 foreclosure sale was canceled constituted an unenforceable gratuitous oral promise.  *Id*.

18  at 10-11 (citing *Mehta*, 737 F.Supp.2d at 1197).  In addition, Wells Fargo contends that Plaintiffs have

19  not explained how they would have altered their behavior in the absence of this oral misinformation.

20  *Id*. at 11.

21         Third, Wells Fargo argues that it was no longer considering Plaintiffs for loan modification at

22  the time of foreclosure.  *Id*.  Wells Fargo contends that the letter Plaintiffs identify as a modification

23  was merely a standard notice of a change in interest rate that would have applied if Mrs. Perez had

24  kept up with her original payments.  *Id*.  In addition, Wells Fargo contends that it was never under any

25  obligation to consider Plaintiffs for a loan modification.  *Id*. at 12 (citing *Hamilton v. Greenwich

26  Investors XXVI, LLC*, 195 Cal.App.4th 1602, 1617, 126 Cal.Rptr.3d 174 (2011)).

27

28

Fourth, Wells Fargo contends that it did not violate the UCL by offering Mrs. Perez a forbearance agreement.  *Id*. at 12.  Wells Fargo states that the SAC identifies no authority to the contrary.  *Id*.

(3)  <u>Wrongful Foreclosure</u>:  Wells Fargo argues that Plaintiffs' wrongful foreclosure claim fails under the tender rule.  *Id*. at 13 (citing Order Granting Defendants' Motion to Dismiss Plaintiffs' Complaint ("Dkt. No. 25"), 26:7-19).

(4)  <u>Negligence</u>:  Wells Fargo states that Plaintiffs' negligence claim is premised on the completion of the foreclosure sale while Wells Fargo was considering Plaintiffs' application for a loan modification.  *Id*. at 14 (citing SAC, ¶ 46).  Wells Fargo contends that it did not owe Plaintiffs any duty because it did not exceed its traditional role as a lender of money.  *Id*. (citing *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal.App.3d 1089, 1095-1096 (1991)).

### 2.    Loanstar Motion

Loanstar contends that it is immune from liability because its acts as a trustee are privileged.  Loanstar Motion, 4-5 (citing Cal. Civ. Code §§ 47, 2924(d); *Kachlon v. Markowitz*, 168 Cal.App.4th 333-334, 85 Cal.Rptr.3d 352 (2008)).  Loanstar notes that Plaintiffs' only allegation of wrongful conduct on the part of Loanstar is that it falsely notified Plaintiffs that the June 28, 2010 foreclosure sale had been canceled but proceeded with the sale.  *Id*. at 4.  Loanstar contends that this allegation is insufficient to break its immunity because Plaintiffs did not allege that Loanstar acted with malice.  *Id*. at 5 (citing *Kachlon*, 168 Cal.App.4th at 333-334, 339-342, 85 Cal.Rptr.3d 352).  In addition, Loanstar argues that Plaintiffs' allegation is incorrect because an automated message cannot serve as notice of a sale cancelation.  *Id*. at 7 (citing Cal. Civ. Code § 2924g(c)).  Loanstar also states that Plaintiffs have not alleged any actions beyond its statutorily protected role of a foreclosure trustee, executed in good faith reliance on instructions given in good faith by Wells Fargo.  *Id*. at 5-6.

(1)  <u>UCL</u>:  Loanstar states that a UCL claim must rely on underlying unlawful, unfair, or fraudulent conduct.  *Id*. at 8 (citing *Bernardo v. Planned Parenthood Federation of America*, 115 Cal.App.4th 322, 9 Cal.Rptr.3d 197 (2004)).  First, Loanstar contends that Plaintiffs have not satisfied the "fraudulent" prong because they have not alleged the underlying fraud with particularity.  *Id*. (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).  Next, Loanstar asserts that the UCL

claim fails because Plaintiffs have not alleged how they were damaged by Loanstar's putative wrongful conduct. *Id.* at 8-9. Specifically, Loanstar states that Plaintiffs have not explained what they could have done to avoid foreclosure in the absence of the information on the automated line. *Id.* In addition, Loanstar argues that Plaintiffs have not alleged any elements of emotional distress, that they had any equity in their property to begin with, or that they lost any personal property. *Id.* at 9. Loanstar does not directly address the "unlawful" or "unfair" prongs. Loanstar does note that "unlawful" conduct must be alleged in terms of the statute violated, implying that Plaintiffs failed to do so. *Id.* at 8.

      (2)   <u>Wrongful Foreclosure</u>: Loanstar asserts that Plaintiffs' wrongful foreclosure claim fails under the tender rule. *Id.* at 6. In addition, Loanstar argues that Plaintiffs have no claim for wrongful foreclosure because they were not given statutory notice that the foreclosure sale had been postponed or canceled. *Id.* at 7 (citing Cal. Civ. Code § 2924g(c)).

### 3. Opposition to Each Motion

      Plaintiffs opposed each motion to dismiss. As a general matter, Plaintiffs argue that Loanstar is not immune from liability where it conducted the trustee sale after giving notice that the sale had been canceled. Opposition to Loanstar's Motion to Dismiss ("Opposition to Loanstar"), 7-9. Plaintiffs contend that malice is apparent where the trustee went forward with a sale that it had previously canceled. *Id.* at 9. In addition, Plaintiffs state that there is nothing in the SAC to show that Loanstar acted in good faith reliance on any information given to it in good faith by Wells Fargo. *Id.* at 7.

      (1)   <u>Rosenthal Act</u>: Plaintiffs assert that their SAC demonstrates action beyond the scope of the ordinary foreclosure process because they alleged that (a) the forbearance agreement required Mrs. Perez to make higher monthly payments, driving her into foreclosure, and that (b) Wells Fargo delayed in processing Mrs. Perez's loan modification application, told Mrs. Perez's agent on February 11, 2010 that her property was out of foreclosure, told Mrs. Perez's agent on June 22, 2010 that the June 28, 2010 sale had been canceled, and thereafter proceeded with the June 28, 2010 sale. Opposition to Wells Fargo's Motion to Dismiss ("Opposition to Wells Fargo"), 3-4. Plaintiffs argue that Wells Fargo's arguments premised on the statute of frauds are inapplicable here because Plaintiffs

are not attempting to enforce an agreement. *Id*. at 4-6. Plaintiffs finally note that the use of the word "canceled" instead of "postponed" indicated that the entire foreclosure process would have had to be initiated from scratch. *Id*. at 6.

(2)    UCL:  Plaintiffs contend that their SAC contains a viable UCL cause of action. First, Plaintiffs assert that they described "unfair" business practices, regardless of whether they established "fraudulent" business practices. Opposition to Loanstar, 6. Second, Plaintiffs contend that they sufficiently pled "unlawful" business practices by both parties based on violations of the Rosenthal Act. *Id*. Third, Plaintiffs argue that they are permitted to seek money damages under the UCL. Opposition to Wells Fargo, 6-7 (citing Cal. Bus. & Prof. Code § 17203). Fourth, Plaintiffs state that they alleged loss of equity in their home based on the difference between the market value of the home and the outstanding debt they owed Wells Fargo. Opposition to Loanstar, 5; Opposition to Wells Fargo, 7. Plaintiffs contend that they did not need to establish the elements of emotional distress because they did not allege a distinct emotional distress-based cause of action. Opposition to Loanstar, 5. Fifth, Plaintiffs argue that Wells Fargo's argument premised on the unenforceable nature of gratuitous oral promises fails for the same reasons as set forth addressing the Rosenthal Act claim. Opposition to Wells Fargo, 7-8. Sixth, Plaintiffs contend that whether the August 10, 2010 letter to Mrs. Perez constituted an attempt to grant her request for a loan modification is a question of fact that cannot be resolved on a motion to dismiss. *Id*. at 8.

(3)    Wrongful Foreclosure:  Plaintiffs assert that the tender rule is inapplicable here for two reasons. First, Plaintiffs argue that the tender rule does not apply where, as here, they are suing for damages as opposed to equitable relief. Opposition to Loanstar, 1-4 (citing *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal.App.3d 575, 578-579, 205 Cal.Rptr. 15 (1984) (a cause of action to set aside a trustee sale should be accompanied by an offer to pay the full amount of the debt because equity will not order that a useless act be performed); *Karlsen v. American Sav. & Loan Ass'n*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971)); Opposition to Wells Fargo, 2. Plaintiffs elaborate that they are not seeking to set aside the foreclosure. Opposition to Loanstar, 4. Rather, they are seeking money damages. *Id*. Second, Plaintiffs contend that the tender rule does not apply where, as here, it would be inequitable to require the plaintiff to tender the amount due on the loan to the foreclosing

beneficiary.  Opposition to Wells Fargo, 2 (citing *Pantoja v. Countrywide Home Loans*, 640 F.Supp.2d 1177, 1184 (N.D. Cal. 2009)).  Plaintiffs explain that it would be inequitable to require them to tender the full amount of the loan to Wells Fargo after the property has been sold to a third party.  *Id.*  Thus, Plaintiffs argue that they have a viable wrongful foreclosure cause of action.

(4)    Negligence:  Plaintiffs contend that they have pled a cause of action for negligence because they alleged that Wells Fargo failed to exercise reasonable care in processing Mrs. Perez's application for a loan modification.  *Id.* at 9 (citing *Garcia v. Ocwen Loan Servicing*, 2010 WL 1881098 (N.D. Cal. May 10, 2010)).  Plaintiffs state that this activity is outside of Wells Fargo's conventional role as a mere lender of money.  *Id.*

### 4.    **Wells Fargo Reply**

(1)    Rosenthal Act:  Wells Fargo argues that it did not violate the Rosenthal Act by reviewing Mrs. Perez for a loan modification and postponing the foreclosure sale because it was under no obligation to take these actions, which were favorable to Plaintiffs.  Wells Fargo's Reply in Support of Motion to Dismiss ("Wells Fargo Reply"), 2-3.  In addition, Wells Fargo contends that these actions are governed by nonjudicial foreclosure statutes and are within the scope of its debt collection efforts.  *Id.* at 3-4 (citing Cal. Civ. Code §§ 2923.5, 2923.6, 2924, 2924.3, 2924.8, 2924b, 2924f, 2924g, 2924h; *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal.App.4th 1149, 1154, 121 Cal.Rptr.3d 819 (2011); *Gardner v. Am. Home Mortgage Serv'g, Inc.*, 691 F.Supp.2d 1192, 1199 (E.D. Cal. 2010)).  Finally, Wells Fargo asserts that its alleged misrepresentations are not among the enumerated misrepresentations made actionable by the Rosenthal Act.  *Id.* at 4-5 (citing Cal. Civ. Code § 1788.13(a)).

(2)    UCL:  Wells Fargo argues that economic injury caused by the challenged business practice is a requirement for standing under the UCL.  *Id.* at 9 (citing *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 323, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011)).  Wells Fargo contends that the only alleged economic injury is the foreclosure sale caused by Plaintiffs' default, not its business practices.  *Id.*  For that reason, Wells Fargo asserts that Plaintiffs' UCL claim fails.

(3)    Wrongful Foreclosure:  Wells Fargo states that the three elements of a wrongful foreclosure cause of action are "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully

United States District Court
Northern District of California

1  oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the

2  party attacking the sale … was prejudiced or harmed; and (3) in cases where the trustor or mortgagor

3  challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was

4  excused from tendering."  *Id*. at 6-7 (quoting *Ogilvie v. Select Portfolio Serv'g*, 2012 WL 4891583, at

5  *6 (N.D. Cal. Oct. 12, 2012) (quoting *Lona v. Citibank, N.A.*, 202 Cal.App.4th 89, 104, 134

6  Cal.Rptr.3d 622 (2011)).  Wells Fargo asserts that Plaintiffs have failed to allege how they were

7  prejudiced by the alleged lack of notice for the foreclosure sale, as they have not alleged any actions

8  they would have taken with proper notice.  *Id*. at 7.  In addition, Wells Fargo contends that the tender

9  rule applies "as a precondition to challenging a foreclosure sale, or any cause of action implicitly

10  integrated to the sale, the borrower must make a valid and viable tender of payment to the secured

11  debt."  *Id*. at 6 (quoting *Montoya v. Countrywide Bank*, 2009 WL 1813973, at *11-*12 (N.D. Cal.

12  June 25, 2009)) (emphasis omitted).

13       (4)   <u>Negligence</u>:  Wells Fargo notes that *Garcia*, cited by Plaintiffs, contains a six factor

14  test to determine whether a lender or servicer owes a borrower a duty of care:  "[1] the extent to which

15  the transaction was intended to benefit the plaintiff, [2] the foreseeability of harm to him, [3] the

16  degree of certainty that the plaintiff suffered injury, [4] the closeness of connection between the

17  defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct,

18  and [6] the policy of preventing future harm."  *Id*. at 7 (quoting *Garcia*, 2010 WL 1881098 at *3).

19  Wells Fargo argues that factors two through five are missing because Plaintiffs were not harmed by its

20  decision to simultaneously review Mrs. Perez for a loan modification, which it had no obligation to

21  do, while going forward with the foreclosure process.  *Id*. at 8.

22       **5.**    **Loanstar Reply**

23       Loanstar asserts that the strict pleading requirements set forth in Federal Rule of Civil

24  Procedure 9(b) apply to Plaintiffs' claims against it because are grounded in alleged fraudulent

25  conduct.  Loanstar's Reply in Support of Motion to Dismiss ("Loanstar Reply"), 3-5.  Loanstar

26  contends that Plaintiffs have not satisfied those requirements with respect to its recorded message.  *Id*.

27  at 5.  In addition, Loanstar argues the Plaintiffs have failed to allege damage or prejudice resulting

28

1  directly from the erroneous message and thus cannot make out a cause of action to set aside a trustee

2  sale.  *Id.* at 5-7 (citing *Angell v. Superior Court*, 73 Cal.App.4th 691, 700, 86 Cal.Rptr.2d 657 (1999)).

3  **IV.    ANALYSIS**

4      **A.    Motion to Remand**

5          **1.    Legal Background**

6              **a.    Motion to Remand and Supplemental Jurisdiction**

7      "Except as otherwise expressly provided by Act of Congress, any civil action brought in a

8  State court of which the district courts of the United States have original jurisdiction, may be removed

9  by the defendant or the defendants, to the district court of the United States for the district and

10  division embracing the place where such an action is pending."  28 U.S.C. § 1441(a).  Original

11  jurisdiction may be based on diversity or the existence of a federal question, as set forth in 28 U.S.C.

12  sections 1331 and 1332.  "A motion to remand a case on the basis of any defect other than lack of

13  subject matter jurisdiction must be made within 30 days of the filing of the notice of removal under

14  section 1446(a).  If at any time before final judgment it appears that the district court lacks subject

15  matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

16      "If a case is improperly removed, the federal court must remand the action because it has no

17  subject-matter jurisdiction to decide the case."  *ARCO Envtl. Remediation v. Dep't of Health &*

18  *Quality*, 213 F.3d 1108, 1113 (9th Cir. 2000).  If the case was properly removed on the basis of

19  federal question jurisdiction the state law claims arising out of a "common nucleus of operative fact"

20  fall within the federal court's supplemental jurisdiction.  *See* 28 U.S.C. § 1367(a); *United Mine*

21  *Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).  If the federal

22  claims that served as the basis for removal are eliminated, the district court has discretion to decline to

23  exercise its supplemental jurisdiction and to remand the remaining state law claims to state court.  28

24  U.S.C. § 1367(a); *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991); *Albingia*

25  *Verischerungs A.G. v. Schenker Intern. Inc.*, 244 F.3d 931, 938 (9th Cir. 2003), *amended on other*

26  *grounds*, 350 F.3d 916 (9th Cir. 2003), *cert denied*, 541 U.S. 1041, 124 S.Ct. 2162, 158 L.Ed.2d 730

27  (2004) ("section 1447(c) does not mean that if the federal claim drops out, the district court must

28  remand … section 1447(c) means that if it is discovered at any time in the litigation that there is no

United States District Court
Northern District of California

15

1  federal jurisdiction, a removed case must be remanded … rather than dismissed[;] … [o]nce

2  supplemental jurisdiction exists, it remains, subject to the discretionary provision for remand");

3  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639, 129 S.Ct. 1862, 173 L.Ed.2d 843 (2009)

4  (where a district court dismisses every claim over which it had original jurisdiction, it retains pure

5  discretion in deciding whether to exercise supplemental jurisdiction over the remaining claims).

6  "[T]here is a distinction between the power to hear state law claims and the discretionary

7  exercise of that power." *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 715 (9th Cir.

8  1990) (citing *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349-350, 108 S.Ct. 614, 98 L.Ed.2d

9  720 (1988)).  To decide whether to exercise jurisdiction over pendent state law claims, a district court

10  should "consider and weigh in each case, and at every stage of litigation, the values of judicial

11  economy, convenience, fairness, and comity…" *Cohill*, 484 U.S. at 349-350, 108 S.Ct. 614, 98

12  L.Ed.2d 720); *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172-173, 118 S.Ct. 523,

13  139 L.Ed.2d 525 (1997).  "[I]n the usual case in which all federal law claims are eliminated before

14  trial, the balance of the factors to be considered … will point toward declining to exercise jurisdiction

15  over the remaining state-law claims." *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir.

16  2008) (quoting *Cohill*, 484 U.S. at 351, 108 S.Ct. 614, 98 L.Ed.2d 720).

### b.      Federal Question Jurisdiction

18  "The district courts shall have original jurisdiction of all civil actions arising under the

19  Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Federal question jurisdiction

20  is found only where a federal question appears on the face of a properly pleaded complaint.

21  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

### c.      Diversity Jurisdiction

23  Federal subject matter jurisdiction based on diversity requires complete diversity of citizenship

24  and an amount in controversy in excess of $75,000. 28 U.S.C. § 1332(a).  "[O]ne exception to the

25  requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'"

26  *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (quoting *Morris v. Princess

27  Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001)).  Fraudulent joinder is a term of art.  *Morris*, 236

28  F.3d at 1067 (citing *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).  "Joinder

16

United States District Court
Northern District of California

1    of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is

2    ignored for the purposes of determining diversity, '[i]f the plaintiff fails to state a cause of action

3    against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Id.*

4    (quoting *McCabe*, 811 F.2d at 1339); *Hunter*, 582 F.3d at 1043.  In construing this standard, district

5    courts have held that remand is improper where a complaint can be amended to state a cause of action

6    against the purportedly fraudulently joined defendant.  *Padilla v. AT & T Corp.*, 697 F.Supp.2d 1156,

7    1159 (C.D. Cal. 2009); *Morrow v. Wells Fargo Bank*, 2012 WL 5471133, at *6 (N.D. Cal. Nov. 9,

8    2012).  "The defendant 'is entitled to present facts showing the joinder is fraudulent.'" *Morris*, 236

9    F.3d at 1067 (quoting *McCabe*, 811 F.2d at 1339).

10        In assessing diversity, "[a] federal court must disregard nominal or formal parties and rest

11   jurisdiction only upon the citizenship of real parties to the controversy."  *Kuntz v. Lamar Corp.*, 385

12   F.3d 1177, 1183 (9th Cir. 2004).  A nominal party is one "who has no interest in the action" and is

13   merely joined to "perform a ministerial act."  *Prudential Real Estate Affiliates, Inc. v. PPR Realty,

14   Inc.*, 204 F.3d 867, 873 (9th Cir. 2000).  "The paradigmatic nominal defendant is a trustee, agent, or

15   depository who is joined merely as a means of facilitating collection."  *Colello*, 139 F.3d at 676

16   (internal quotations omitted); *see also Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F.Supp.2d

17   1050, 1052 (N.D. Cal. 2009) (trustee defendant named in the complaint solely in its capacity as a

18   trustee and not because of any wrongdoing was a nominal defendant, where trustee filed declaration

19   of nonmonetary status pursuant to California Civil Code section 2924l).  However, courts have found

20   that trustees are more than nominal defendants where the complaint includes substantive allegations

21   and asserts claims for money damages against the trustee.  *See Silva v. Wells Fargo Bank NA*, 2011

22   WL 2437514, at *5 (C.D. Cal. June 6, 2011) (trustee defendant not a nominal defendant where the

23   plaintiffs assert in their complaint claims against all defendants for money damages, including

24   damages to their credit rating and home value, and emotional and physical distress); *Couture v. Wells

25   Fargo Bank, N.A.*, 2011 WL 3489955, at *3 (S.D. Cal. Aug 9, 2011) (trustee defendant not a nominal

26   defendant where the plaintiff's complaint contains substantive allegations and claims for money

27   damages against trustee defendant).

28   //

17

United States District Court
Northern District of California

#### d.    Relevant Substantive Law

##### i.    Trustee Liability

The court in *Kachlon v. Markowitz* explained that California Civil Code section 2924(d) makes the trustee's fulfillment of its statutory duties privileged communications, subject to a qualified common interest privilege, under section 47.   168 Cal.App.4th at 339-340, 85 Cal.Rptr.3d 532. Section 47, in turn, creates a privilege for "a communication, without malice, to a person interested therein."   Cal. Civ. Code § 47(c)(1).   For this purpose, malice is defined as actual malice, meaning "that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights."   *Kachlon*, 168 Cal.App.4th at 336, 85 Cal.Rptr.3d 532.

Section 2924(b) also creates the following privilege for trustees:

> In performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage.

Cal. Civ. Code Section 2924(b).

##### ii.    UCL

The UCL prohibits "unfair competition," which is defined as any "unlawful, unfair or fraudulent business act or practice."   Cal. Bus. & Prof. Code § 17200.   A claim may be brought under the UCL "by a person who has suffered injury in fact and has lost money or property as a result of unfair competition."   Cal. Bus. & Prof. Code § 17204.   Therefore, to establish standing under the UCL a plaintiff must "(1) establish a loss or deprivation of money sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice … that is the gravamen of the claim."   *Lawther v. OneWest Bank, FSB*, 2012 WL 298110, at *23 (N.D. Cal. Feb. 1, 2012) (quoting *Kwikset Corp.*, 51 Cal.4th 310, 337, 120 Cal.Rptr.741, 246 P.3d 877).

To establish a violation of Section 17200, a plaintiff may establish a violation under any one of three prongs.   To state a cause of action based on an "unlawful" business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law.   *People v.*

18

*McKale*, 25 Cal.3d 626, 635, 159 Cal.Rptr. 811, 602 P.2d 731 (1979). A "fraudulent" business act or practice is one in which members of the public are likely to be deceived. *Weinstat v. Dentsply Intern., Inc.*, 180 Cal.App. 4th 1213, 1223 n.8, 103 Cal.Rptr.3d 614 (2010)(citations omitted). "'Fraudulent,' as used in the statute, does not refer to the common law tort of fraud but only requires a showing that members of the public 'are likely to be deceived.'" *Olsen v. Breeze*, 48 Cal.App.4th 608, 618, 55 Cal.Rptr.2d 818 (1996). UCL claims premised on fraudulent conduct trigger the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir.2009).

Finally, while there is disagreement among California courts regarding the definition of "unfair" business practices, three tests have been applied, as the court in *Phipps v. Wells Fargo* explains:

> In consumer cases, such as this, the California Supreme Court has not established a definitive test to determine whether a business practice is unfair. *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal.App.4th 247, 256, 106 Cal.Rptr.3d 46 (2010). A split of authority has developed among the California Courts of Appeal, which have applied three tests for unfairness in consumer cases. *Drum*, 182 Cal.App.4th at 256, 106 Cal.Rptr.3d 46.

> The test applied in one line of cases requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Drum*, 182 Cal.App.4th at 256, 106 Cal.Rptr.3d 46 (citing *Bardin v. Daimlerchrysler Corp.*, 136 Cal.App.4th 1255, 1260–1261, 39 Cal.Rptr.3d 634 (2006); *Davis v. Ford Motor Credit Co.*, 179 Cal.App.4th at 581, 595–596, 101 Cal.Rptr.3d 697 (2009); *Gregory v. Albertson's Inc.*, 104 Cal.App.4th 845, 854, 128 Cal.Rptr.2d 389 (2002).

> . . .

> A second line of cases applies a test to determine whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum*, 182 Cal.App.4th at 257, 106 Cal.Rptr.3d 46 (citing *Bardin*, 136 Cal.App.4th at 1260, 39 Cal.Rptr.3d 634; *Davis*, 179 Cal.App.4th at 594–595, 101 Cal.Rptr.3d 697)).

> . . .

> The test applied in a third line of cases draws on the definition of "unfair" in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that "(1) the

19

1   consumer injury must be substantial; (2) the injury must not be outweighed by any
    countervailing benefits to consumers or competition; and (3) it must be an injury that

2   consumers themselves could not reasonably have avoided." *Drum*, 182 Cal.App.4th at

3   257, 106 Cal.Rptr.3d 46 (citing *Davis*, 179 Cal.App.4th 597–598, 101 Cal.Rptr.3d 697;
    *Camacho v. Automobile Club of Southern California*, 142 Cal.App.4th 1394, 1403, 48

4   Cal.Rptr.3d 770 (2006)).

5   2011 WL 302803, at *16 (E.D.Cal., Jan. 27, 2011).

6       The relief provided under the UCL is equitable in nature. *Aryeh v. Canon Business Solutions,*

7   *Inc.*, __ Cal.4th __, 2013 WL 263509, at *6 n.5 (2013).  Damages cannot be recovered.  *Korea Supply*

8   *Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003).

9                    **2.      Application of Law to Facts**

10      This Court had subject matter jurisdiction over the case at the time of removal because

11  Plaintiffs' initial complaint asserted a cause of action under the TILA.  *See* 15 U.S.C. § 1601.  The

12  remaining state law claims fell within this Court's supplemental jurisdiction because each claim arose

13  out of the facts surrounding the inception of Plaintiffs' mortgage loan and their subsequent default.

14  This Court dismissed Plaintiffs' TILA claim, along with all of Plaintiffs' other claims, with leave to

15  amend.  Plaintiffs did not raise the TILA claim, or any other federal claim, in either of their two

16  amended complaints.  Therefore, this action no longer falls within the Court's federal question

17  jurisdiction.  The parties dispute whether supplemental jurisdiction is the only remaining basis for

18  jurisdiction and, if it is, whether the Court should decline to exercise its supplemental jurisdiction.  As

19  explained below, complete diversity is lacking.  Thus, supplemental jurisdiction is the only remaining

20  basis for jurisdiction.  The Court declines to exercise its supplemental jurisdiction over Plaintiffs'

21  remaining state law claims.  Plaintiffs' Motion for Remand is granted.

22                    **a.      Lack of Diversity Jurisdiction**

23      Complete diversity of the parties is lacking.  Plaintiffs are citizens of California.  SAC, ¶ 1.

24  Loanstar is a citizen of California.  *See* Supplemental Declaration of Glenn H. Wechsler, ¶ 4.[5]  The

25  Court must consider Loanstar's citizenship because Loanstar is not a nominal party and Loanstar was

26  not fraudulently joined.

27  _____

28  [5] LLC's are "citizen[s] of every state in which [their] owners/members are citizens."  *Johnson v. Columbia Props.*
    *Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  Loanstar's sole member is First American Title Company, a California
    corporation.

20

United States District Court
Northern District of California

1    Loanstar is not a nominal party in this action.  In their SAC, Plaintiffs make two substantive

2  claims – violation of the UCL and wrongful foreclosure – against Loanstar.  SAC, ¶¶ 33-44.  Plaintiffs

3  seek money damages for lost equity in their property, lost personal property, and severe emotional

4  distress.  *Id.*  Both claims are premised on Plaintiffs' allegation that, on June 26, 2010, Loanstar's

5  status line contained a recorded message stating that the June 28, 2010 sale had been canceled but the

6  sale went forward.  *Id.* at ¶¶ 20-21, 37, 43.  It is clear that Loanstar was not joined purely to perform a

7  ministerial act.  Rather, Plaintiffs seek damages from Loanstar based on its conduct, which they allege

8  has caused them to lose equity in their home, suffer emotional distress, and lose personal property.

9    Loanstar was not fraudulently joined.  Plaintiffs did not "obvious[ly]" fail to state a claim

10  against Loanstar.  First, Loanstar is not obviously shielded from liability by the privileges set forth in

11  California Civil Code sections 2924(b) and 2924(d).  Assuming the common interest privilege

12  incorporated by section 2924(d) applies, Plaintiffs have pleaded facts – that on June 26, 2010

13  Loanstar's automated message "falsely" reported that the June 28, 2010 sale had been canceled – that

14  may demonstrate malice.  That is, these facts tend to show that Loanstar lacked reasonable grounds to

15  believe that the sale had been canceled.  To the extent that the SAC arguably would be subject to

16  dismissal on the basis of these privileges, Wells Fargo has not shown that Plaintiffs would be unable

17  to re-allege their allegations to survive dismissal.  *See Morrow*, 2012 WL at 5471133 *6.  Moreover,

18  to the extent the claims in the SAC arguably sound in fraud and fail to meet the heightened pleading

19  standard in Rule 9(b), Wells Fargo has not shown Plaintiffs would be unable to file an amended

20  pleading to do so.  *See id.*

21    Second, Plaintiffs' cause of action against Loanstar for violation of the UCL is not obviously

22  deficient.  Plaintiffs alleged that Loanstar had an outgoing recorded message on its status line that

23  notified Plaintiffs, on June 26, 2010, that the June 28, 2010 sale of the Property had been canceled.

24  Plaintiffs also alleged that Wells Fargo acquired the property for far less than its market value.  Wells

25  Fargo paid $617,053.01 to obtain the property at the sale.  At that time, Wells Fargo claimed that

26  Plaintiffs owed $618,243.01 on the mortgage loan.  Plaintiffs allege that the fair market value of their

27  home at that time was $740,000.

28

21

There is no obvious lack of standing.  It is plausible that Loanstar, by maintaining a status line with an outgoing message stating that the pending sale had been canceled, dissuaded interested buyers from attending the June 28, 2010 foreclosure sale.  It is possible that this would have depressed the sale price of the home causing Plaintiffs to lose a quantifiable amount of equity in their home upon sale, one item of damages Plaintiffs alleged.  Thus, there is no obvious absence of an economic injury.

In addition, Loanstar's actions do not obviously fail to meet, at least, the second test for unfairness.  Placing an outgoing message on the foreclosure status line that inaccurately states that a pending sale has been canceled is, at a minimum, arguably unfair and substantially injurious to consumers.  Moreover, there is no utility to such conduct as it serves only to allow the foreclosing parties to obtain foreclosed properties at a lesser price.  Indeed, the conduct appears to undermine the notice requirement set forth in California Civil Code section 2924f because it prevents the public from being notified of the pending foreclosure sale.  *See* Cal. Civ. Code § 2924f (2010).  Finally, Plaintiffs seek injunctive relief against Loanstar, which is available to remedy a violation of the UCL.

Wells Fargo has not met the high standard of demonstrating Plaintiffs' obvious failure to state a claim against Loanstar.[6]  Moreover, Wells Fargo has not demonstrated Loanstar is a nominal defendant.  Loanstar and Plaintiffs are both California citizens for the purposes of diversity.  There is no complete diversity in this case.

### b.      Supplemental Jurisdiction

The Court finds that the factors of judicial economy, convenience, fairness, and comity, taken together, weigh in favor of remand.

The case has been before this Court for over one and one half years.  During that time period, the Court dismissed Plaintiffs' initial complaint.  Plaintiffs thereafter amended their complaint, and the parties conducted some discovery.  During discovery, Plaintiffs moved to amend their complaint once more.  This Court granted the motion, and Plaintiffs filed their SAC on October 26, 2012.  The SAC contains factual allegations that are substantially different from those raised in either of Plaintiffs' previous complaints.  In addition, the SAC alleges different causes of action, or causes of

---

[6] Wells Fargo draws attention to the short time period between the filing of the SAC and the pending Motion to Remand. Supplemental Declaration of Thomas N. Abbott, ¶ 7. Wells Fargo also points out that Loanstar was not named as a defendant in the first amended complaint. *Id*. at ¶ 6. This inquiry is beside the point.  In any event, the SAC was filed by different counsel and alleges new facts as to Loanstar's culpability.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   action based on different theories than those raised in the previous complaints.  Defendants have each

2   filed motions to dismiss the SAC, but the Court has not yet ruled on either motion.  The trial date is

3   not imminent and, given the novelty of the SAC, this Court has not performed a substantial amount of

4   legal analysis that would need to be repeated by the state court.  There would be no significant loss of

5   judicial economy if this action were remanded.  In addition, the SAC relies entirely on California law,

6   so considerations of comity weigh in favor of granting remand.  Moreover, Wells Fargo has not

7   argued that the shifting the forum to San Mateo County Superior Court, located 26.5 miles from this

8   courthouse, would cause them any inconvenience.

9          Wells Fargo argues that allowing remand, as opposed to deciding the motions to dismiss, will

10  prolong the life of the case because they will be forced to demur in state court.  However, this

11  straightforward calculation seems to assume that the motions will be granted.  Moreover, the state

12  forum will provide just as fair a proceeding as the federal one.  Thus, the fairness factor does not

13  weigh strongly against remand.

14         Balancing the factors, the Court concludes that the interests of judicial economy, comity,

15  fairness, and convenience will be best served by remanding this case to state court.  Plaintiffs Motion

16  to Remand is granted.

17         **B.      Motions to Dismiss**

18         Because the Motion to Remand is granted, the Court does not reach the Motions to Dismiss.

19  **V.      CONCLUSION**

20         For the foregoing reasons, Plaintiffs' Motion to Remand is granted and Defendants' Motions

21  to Dismiss are denied without prejudice.

22         IT IS SO ORDERED.

23  Dated: March 8, 2013

24

25

26  _____

27         JOSEPH C. SPERO

28         United States Magistrate Judge